(No. 13289.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs*. JOHN MIRABELLA *et al*. Plaintiffs in Error.

*Opinion filed June 16, 1920—Rehearing denied October 12, 1920.*

1. CRIMINAL LAW—*acquittal of co-defendant is not ground for granting accomplices a new trial.* The fact that the jury acquitted a co-defendant, even though the evidence may have pointed more strongly to his guilt than to that of his accomplices, is not ground for granting the accomplices a new trial.

2. SAME—*officer may testify that key found on defendant fitted the lock on barn where stolen property was found.* Where defendants are charged with receiving a stolen automobile, testimony as to what was in a barn where the stolen car was being kept at the time of its re-sale is admissible, and the officer who arrested one of the defendants may testify that a key found on the person of said defendant fitted the lock on the barn.

3. SAME—*when secondary evidence of a note given in sale of stolen property is admissible.* Where defendants are charged with receiving a stolen automobile, police officers may testify that pieces of paper taken from the pocket of one of the defendants constituted, when pieced together, a note signed by the party to whom the defendants had sold the car, where the officer who took the note from the prisoner also testifies that it has been lost and can not be found.

4. SAME—*what testimony by police officer is proper.* Testimony by a police officer tending to show that certain parts of an automobile which were identified at detective headquarters by the owner of a stolen car were the parts found by the police in the barn where the stolen automobile was kept is properly admitted on the trial of persons charged with receiving the stolen car.

5. SAME—*when an instruction cautioning jury to confine themselves to a consideration of the evidence is not improper.* An instruction cautioning the jury against considering any argument not based on the evidence, any evidence stricken out by the court or any action or statement of the court as an expression of opinion upon the facts of the case, and stating that the jury should determine the facts of the case from the evidence and apply to such facts the law as stated in the instructions, is not erroneous as taking from the jury their right to be judges of the law.

6. SAME—*when instruction as to possession of stolen property should be limited.* Where defendants are on trial for larceny and receiving stolen property, an instruction that unexplained posses-

sion of stolen property soon after the larceny is *prima facie* evidence of guilt of the possessor is not applicable to the offense of receiving stolen property and should be limited to the count for larceny.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding.

EUGENE L. McGARRY, and THOMAS E. SWANSON, for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, and JOHN E. FOSTER, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiffs in error, John Mirabella and Salvatore Mirabella, and one Benson, were indicted for the larceny of an automobile and for receiving stolen property. Plaintiffs in error were convicted of the crime of receiving stolen property and Benson was acquitted. This writ of error is prosecuted to review the judgment of the criminal court.

September 5, 1918, the automobile of Joseph Paltz was stolen from the street in front of his place of business at 1917 West Madison street, Chicago. He reported the theft to the police and about two weeks later he was taken by detectives to a garage, where he identified a car as the one he had lost. The car had been altered and some of the equipment removed from it. He identified an instrument board and a running-board which he saw at the detective bureau as parts of his machine. The car was found by the police in the possession of William Abrahamson. He testified that some time in the latter part of August plaintiffs in error came to his store and had a conversation with him in regard to selling him a Ford car. They told him

they were in the automobile business and that they would
pick up a Ford car for him. John Mirabella did all the
talking at this time. About two weeks after this conver-
sation Benson called Abrahamson, saying that he had a
Ford car for sale and that he had been directed to call him
by John Mirabella. On the invitation of Benson, Abra-
hamson went to a barn at 1708 West Huron street, Chicago,
and there saw a car. Benson priced the car at $350. They
tried to start it but could not. Salvatore Mirabella came
to the barn and brought four coils which he put in the car.
Abrahamson finally agreed to pay $300 for the car, and the
three men went to the office of John Sopocy, a notary pub-
lic, to have a bill of sale prepared. Salvatore Mirabella
directed that the bill of sale be signed by Benson because
the car was in Benson's name. Abrahamson said he could
pay only $100 in cash and that he would give his note for
$200. Mirabella objected to this at first but finally agreed.
When Abrahamson handed the cash and the note to Sopocy
the latter pushed it over to the end of the table and Mira-
bella picked it up and put it in his pocket. Benson said
something to Mirabella about settling between themselves
when they reached home. Mirabella paid the notary fee.
He had the note made payable to himself, explaining that
he and Benson were doing business together and had a
repair shop together. When John Mirabella was arrested
the officer noticed that he kept his hand in his right coat
pocket. He was searched and in his pocket were found a
lot of scraps of paper, which, when pasted together, con-
stituted a note for $200 signed by Abrahamson. In his pos-
session was also found a key which fitted the lock on the
barn at 1708 West Huron street. It was in this barn that
the officers found a lot of automobile accessories, among
which were the parts of Paltz's car. Neither of the plain-
tiffs in error testified on the trial and no evidence except
reputation evidence was offered in their behalf, so that the
circumstances pointing to their guilt stand undisputed.

It is first contended by plaintiffs in error that the evidence does not establish their guilt beyond a reasonable doubt. They contend that the fact that the jury acquitted Benson when the evidence pointed more strongly to his guilt than to theirs shows that the jury did not give the evidence in the case the careful consideration which the law requires. We are unable to understand how the jury made the distinction, unless they thought that Benson was being used by plaintiffs in error to help them in their scheme to dispose of stolen cars. Regardless of why the jury permitted one of the guilty parties to escape, their failure to convict him is no reason for granting his accomplices a new trial. No attempt was made to explain any of the circumstances which, in the absence of explanation, inevitably lead to the conclusion that they were guilty of the crime of which they were convicted.

It is next urged that the court erred in permitting a police officer to testify that Paltz picked out the instrument board and running-board as his property and took them away with him. Paltz testified that he found parts of his car at detective headquarters, and the testimony of the officer only tended to identify the property claimed by Paltz as the property found by the officers in the barn. There was no error in receiving this testimony.

It is also contended that it was error to permit the officer to testify that the key found on the person of John Mirabella fitted the lock on the barn where the car was found. We think this evidence was clearly competent against both plaintiffs in error because it was shown that they were acting together in dealing in automobiles. The weight of this testimony was for the jury. It was also competent for the court to admit testimony of what was found in this barn.

It is further contended that the court should not have permitted the witnesses to testify that the pieces of paper taken from the coat pocket of John Mirabella, pieced together, constituted the note signed by Abrahamson, on the

ground that it was not the best evidence. The officer who took ·the note from the prisoner stated that it had been lost and that he was not able to produce it. We think the evidence was properly admitted.

It is further contended that the court erred in giving to the jury an instruction which stated in part: "The jury are instructed that from anything the court has said or done in this case you are not to understand that he has any opinion upon the facts of the case. It is the duty of the jury to find and determine the facts of this case from the evidence, and, having done so, to apply to such facts the law as stated in these instructions. The court further instructs the jury that these instructions are given and should be considered together as one entire series, and each instruction should be considered in connection with all other instructions bearing upon the same subject."

The instruction went on to caution the jury against considering any argument not based on the evidence or any offered evidence denied or stricken out by the court. The objection to the instruction is that it is against the plain language of the statute, which provides that the jury shall be the judges of the law as well as the facts. While the instruction is inartificially drawn, we see no error in giving· it. (*Davison* v. *People,* 90 Ill. 221; *People* v. *Campbell,* 234 id. 391.) The purpose of the instruction was to caution the jury to consider only those matters properly before it. If plaintiffs in error desired that the jurors be further instructed on their right to ignore the court's instructions they should have submitted such an instruction.

Complaint is also made of the People's third instruction, which told the jury "that possession of stolen property, the proceeds of a larceny, soon after the commission of the offense, unless explained, is *prima facie* evidence of the guilt of the person in whose possession the property is found." This instruction is not applicable to the offense of receiving stolen property, for which plaintiffs in error were con-

victed, and it should have been limited to the larceny count in the indictment. (*State* v. *Bulla,* 89 Mo. 595; *State* v. *Richmond,* 186 id. 71.) Notwithstanding the error in failing to limit this instruction to the larceny count, we are convinced that there is abundant evidence in the record to justify the conviction of plaintiffs in error of the offense charged in either count of the indictment and that the jury could not reasonably have returned any other verdict than one of guilty. Taking this view of the record, we hold that the omission was not reversible error.

We have examined all of the errors urged for a reversal of this conviction. The evidence standing in the record undisputed clearly justified the verdict. Plaintiffs in error have had a fair trial conducted without substantial error. The weight of the evidence was for the jury, and we find that the evidence clearly justified their verdict.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*

---

(No. 13330.—Reversed and remanded.)
GLEN H. MCBRIDE *et al.* Appellees, *vs.* CECIL CLEMONS *et al.* Appellants.

*Opinion filed June 16, 1920—Rehearing ·denied October 8, 1920.*