(No. 13467.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM LARDNER, Plaintiff in Error.

*Opinion filed December 21, 1920—Rehearing denied Feb. 4, 1921.*

1. CRIMINAL LAW—*what is not evidence that the property was stolen.* Evidence that a rug was in a stock of goods in a store on a certain day and was missing the next day does not sustain a charge that the rug was stolen.

2. SAME—*possession of stolen property must be exclusive in defendant to be prima facie evidence of guilt.* The possession of stolen property soon after it was stolen is *prima facie* evidence of guilt only when the possession is exclusive in the defendant, and if the place where the property is found is such that others have access to it as well as the defendant, the circumstance is not evidence that the defendant, and not someone else, stole the property.

3. SAME—*instruction that the possession of stolen property is prima facie evidence of guilt should be limited to count for larceny.* Where defendants are indicted for larceny and receiving stolen property, an instruction that possession of stolen property soon after the commission of the offense is *prima facie* evidence of guilt should be limited to the count for larceny.

4. SAME—*effect of verdict of guilty of receiving stolen property under indictment also charging larceny.* Under an indictment for larceny and for receiving stolen property, the effect of a verdict of guilty of the latter charge, without any finding on the larceny count, is to acquit the defendant of larceny.

5. SAME—*mere possession of stolen property is not evidence of knowledge that it was stolen.* Knowledge by the defendant that the property was stolen when he received it is essential to a conviction of the crime of receiving stolen property, and the recent possession of stolen property is not evidence of such knowledge, which must be proved beyond a reasonable doubt.

6. SAME—*instruction should not encourage jury to disagree.* An instruction that if any juror should entertain a reasonable doubt of the defendant's guilt after consultation with fellow-jurymen they cannot find the defendant guilty amounts to little more than an invitation to the jury to disagree and is properly refused.

7. SAME—*when instruction on reasonable doubt is properly refused.* An instruction on the subject of reasonable doubt stating it does not require a strong doubt to justify an acquittal is prop-

erly refused, as it is not a question, in arriving at a verdict, whether a doubt is strong or weak but whether it is a reasonable doubt.

THOMPSON, FARMER and DUNCAN, JJ., dissenting.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. ANTON T. ZEMAN, Judge, presiding.

JOHN F. BYRNE, and CHARLES P. R. MACAULAY, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and GEORGE C. DIXON, (EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

William Lardner and William Caesar were indicted in the criminal court of Cook county for larceny and receiving stolen property. Lardner had a separate trial, was convicted of receiving stolen property and was sentenced to imprisonment in the penitentiary. By this writ of error he seeks to reverse the judgment on the grounds that it is not sustained by the evidence and that the court erred in instructing the jury.

The rug charged to have been stolen was alleged to have been the property of Marshall Field & Co. The evidence did not sustain the charge that it was stolen. Two witnesses testified that they saw the rug in the store on May 24, 1918, and that it was missing the next day. The witnesses were both buyers of Marshall Field & Co., and no evidence was introduced as to their duties other than is to be implied from the word "buyer" and the fact that they checked up the stock of rugs. It appears that there were 5000 rugs in the rug department, but not what employees, or how many, made sales of or had access to the rugs or what record was kept of sales. One of the buyers was asked on his direct examination: "What did you find on your check-up? Were any rugs missing that had not been sold?" and answered, "Three pieces." This is not

evidence that the three pieces were not sold by some other employee authorized to make sales. The only basis for inferring that the rug was stolen is that on one day it was in the stock and the next day it was not.

Thomas McFarland, a police sergeant, testified that on May 24 he turned the corner on Monroe street, walking south on Fifth avenue, and saw two men going into a store. He followed them and saw Lardner and Caesar talking to a tailor about getting some clothes made. There were two packages there lying at the window, and he asked the men where they got them, and they said they found them. There were three rugs, including the rug in question, and fourteen silk shirts in the packages. There was no evidence that the other two rugs or the shirts were stolen. The goods were in two separate packages. Lardner did not have either of the packages on his person or in his hand or on his arm. The witness did not know which one of the two said they found the packages. This was all the evidence in chief.

Lardner testified that he met Caesar at Fifth avenue and Adams street and they went to the tailor shop. Neither of them had any bundle when they went into the tailor shop. When the officer came in Lardner was in the middle of the place and the packages were up in front. The officer opened the packages and saw the rugs and asked whose they were, and Lardner said he knew nothing about them. He did not see the rugs and did not know the packages were there, did not tell the sergeant that he found the packages, and denied stealing the rugs or telling anyone that he found them. He stated that he did not have in his possession on that day or any previous day that rug or any other rug. He had no package when he met Caesar and Caesar had none, and they had none when they went into the tailor shop. William J. Becwar testified in rebuttal that when the two men came into his store they had bundles before they were arrested.

The court instructed the jury that "possession of stolen property, the proceeds of a robbery or burglary, soon after the commission of the offense, is *prima facie* evidence of the guilt of the person in whose possession such property is found." There was no evidence that the rug in question was the proceeds of a robbery or burglary, and there was no proof that it was in the possession of Lardner. The testimony of the prosecution is that there were two packages, but only one contained stolen property, and it is not shown whether that one was in the possession of Lardner or Caesar. The possession of stolen property soon after it is stolen is *prima facie* evidence of guilt only when the possession is exclusive in the defendant. If the place where the property is found is such that others have access to it as well as the defendant, the circumstance is not evidence that the defendant, and not someone else, stole the property. (*Watts* v. *People,* 204 Ill. 233.) The instruction was not limited to the count for larceny but left the jury at liberty to apply it to either count. The effect of the verdict of guilty of receiving stolen property without any finding on the larceny count was to acquit the defendant of larceny. Knowledge by the defendant, when he received it, that the property was stolen is essential to a conviction of the crime of receiving stolen property knowing it to be stolen, and such knowledge must be proved beyond a reasonable doubt. (*Cohn* v. *People,* 197 Ill. 482.) The recent possession of stolen property is not evidence of such knowledge. (*State* v. *Buella,* 89 Mo. 595; *State* v. *Richmond,* 186 id. 71.) In *People* v. *Mirabella,* 294 Ill. 246, the error in giving this instruction where counts for larceny and receiving stolen property are joined, without limiting it to the larceny count, is recognized, though the error was disregarded and the judgment affirmed in that case because the evidence in the record was such that the jury could not reasonably return any other verdict than one of guilty.

296—13

It is insisted that it was error to refuse instruction No. 15 asked by the defendant, as follows:

"The defendant is presumed to be innocent until his guilt is established by such evidence as will exclude every reasonable doubt. Therefore the law requires that no person shall be convicted of a crime until each and every one of the jury is satisfied by the evidence in the case, to the exclusion of every reasonable doubt, that the defendant is guilty as charged. If any one of the jury, after having duly considered all the evidence and after having consulted with his fellow-jurymen, should entertain such reasonable doubt, the jury cannot, in such case, find the defendant guilty."

Of the last sentence in this instruction it was said in *People* v. *Lee*, 237 Ill. 272: "Whatever may be said of this instruction as an abstract proposition, it ought not to be given in any case, since its inevitable tendency is to discourage agreements of juries. It amounts to little more than an invitation to the jury to disagree." The same observation applies to refused instruction No. 17. It was not error to refuse these instructions. *People* v. *LeMorte*, 289 Ill. 11; *Addison* v. *People*, 193 id. 405; *Little* v. *People*, 157 id. 153.

It is insisted that instruction No. 7, which was refused, should have been given. It is as follows:

"In order to necessitate an acquittal in this case it is not necessary that the jury should entertain a strong doubt of the guilt of the defendant when all the evidence is considered together. If any juror can give a good reason, based on the evidence, for doubting the defendant's guilt, then he has a reasonable doubt."

It was properly refused. It is not a question, in arriving at a verdict, whether a doubt is strong or weak but whether it is a reasonable doubt. A reasonable doubt was sufficiently defined in the instructions which were given, and this refused instruction would have been of no assistance

to the jury, but was rather an invitation to base a verdict of not guilty on some fanciful or visionary doubt.

The judgment is reversed and the cause remanded to the criminal court.

*Reversed and remanded.*

THOMPSON, FARMER and DUNCAN, JJ., dissenting:

We are convinced that plaintiff in error is guilty of the offense for which he was convicted and we do not consider the errors occurring on the trial of sufficient importance to demand a reversal of the judgment. The rug in question was positively identified by the employees of Marshall Field & Co. as a rug of special design, made in Japan. These employees identified the rug as one of three rugs that were missing from the rug department. There was no contention at the trial that the rug was not stolen, and we think the evidence clearly justified the conclusion that it was stolen. The contention of plaintiff in error was that he did not steal the rug, and, according to the testimony of the police officer who arrested him, he claimed that he found it. The tailor in whose shop plaintiff in error was arrested testified that plaintiff in error and Caesar came into his store carrying the packages mentioned in the opinion of the court. They came into the shop hurriedly, laid the packages down and requested that the tailor show them a suit. We think their conduct and the events immediately following justify the conclusion that they saw the police officer and hurried into the shop to prevent detection. The evidence, to our minds, clearly shows that plaintiff in error and Caesar were acting together in all that they did and that the possession of the stolen property was joint. It is our opinion that the evidence shows the rugs to have been stolen, and that the jury·was clearly justified in concluding that plaintiff in error received the stolen rugs and converted them to his own use with the knowledge that they were stolen.