THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOANN CHAMBERS, Defendant-Appellant.

(No. 72-132;

Third District—October 25, 1973.

Steven Hurley, Assistant Appellate Defender, of Ottawa, for appellant.

Bruce Falk, Assistant State's Attorney, of Joliet, for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

The defendant, Joann Chambers, was indicted for the offenses of indecent liberties with a child and aggravated battery. She was found guilty of both offenses at a bench trial and was sentenced by the circuit court of Will County to a term of from four to six years on the first count, and to a term of from three to six years on the aggravated battery count.

On April 7, 1971 Bassaroni Person, aged four, went to play with Jo-Jo Hinton. After being gone 20 or 25 minutes he returned home walking wide-legged, his rectum bleeding, his penis scratched and swollen and the side of his face had a red hand print on it. A physician examined him shortly thereafter and noticed "a little swelling at the base of the scrotum, that on the skin of the penis there were a few scratches and irritated areas * * *." He saw a tear in the rectal area from which Bassaroni was bleeding. He was shown a toilet brush and stated that it was one of a general type of instrument which could have caused the tear. He was unable to determine what caused the other injuries.

Bassaroni's mother testified that after discovering his condition she took him to the Hinton home where they met the defendant and Mrs. Hinton. Bassaroni at that time did not indicate that defendant was the person who injured him. Mrs. Hinton testified that Bassaroni indicated that defendant had done it. Shortly thereafter, Bassaroni did point to the defendant who then stated, "If I did do it, ain't no mother fucker going

to do nothing about it and that goes for you too, lady." Bassaroni also pointed out another woman and later told a police officer at first that a man did it and then changed his story saying he had been injured by a woman.

An expert analyzed hair samples taken from Bassaroni's clothes. They could have originated from either defendant or Mrs. Hinton. The same expert determined that Bassaroni had type A blood which was found on the Hinton's toilet bowl, bathroom floor, bathroom rug and on the toilet brush. It was also found on defendant's jacket near the right cuff. Blood was also found on defendant's blouse but it could not be told if it was human in origin.

Defendant was arrested almost within the hour and was taken to the police station. On the way she was given the *"Miranda* Warnings". She made no statement other than to the effect that she didn't do anything. After being booked, she was questioned again after being given her rights. At about 11:00 P.M. she was questioned again. At 10:00 A.M. she was awakened, read her rights and questioned again. She complained that her hands were swollen and that she was pregnant. She, at that time, confessed. She repeated the confession for the tape recorder. She said that Bassaroni came to the house and asked for Jo-Jo, then asked to go to the bathroom so she hit him across the face, that she followed him to the bathroom where she first scratched and then bit his penis, that she then took the toilet brush and put it up his rectum.

After the confession defendant was taken to her home. She was crying there and her husband said, "Why are you crying, you didn't do anything." She replied, "But I did."

On this appeal defendant first contends that section 12—4 of the Criminal Code is unconstitutional for the reason that it creates an unreasonable classification in violation of the equal protection clause. She argues that while she was convicted of a felony under section 12—4, one committing the same acts under the same circumstances could be convicted of a misdemeanor under that section, thus depriving her of equal protection of the law. She cites *People v. McCollough,* 8 Ill.App.3d 963, 291 N.E.2d 505; *People v. Yonker,* 351 Ill. 139, and *Olson v. Delmore,* 48 Wash. 2d. 545, 295 P. 2d 324.

■ ■ We believe that *People v. Keegan,* 52 Ill. 2d 147 is dispositive of this contention. On page 151 the court said, "There are a number of sections of the Criminal Code in which the penalty provided for the same proscribed conduct ranges from confinement in the penitentiary, \* \* \* to confinement other than in the penitentiary for less than one year and or a fine, \* \* \*." The opinion then, on page 152, lists over half a page of examples including aggravated battery. In disposing of the argu-

ment that the statute gives unguided discretion to a grand jury or a magistrate to determine whether a defendant should be charged with a misdemeanor or a felony the court said, "We have previously held that if the conduct for which a defendant is prosecuted constitutes a misdemeanor under one statute and a felony under another, there is no error in convicting him of the felony. (*People v. Singer*, 288 Ill. 113). With respect to the discretion to be exercised in determining under which statute the defendant is to be prosecuted, in *People v. Rhodes*, 38 Ill.2d 389, at page 396, we said: 'The State's Attorney is the representative of the People and has the responsibility of evaluating the evidence, and other pertinent factors and determining what offense can properly and should properly be charged.' We hold, therefore, that in being charged under section 11—4, although the same conduct could have been the basis of a conviction under section 11—5, the defendant was not denied equal protection of the law."

*Certiorari* was denied by the U.S. Supreme Court in *Keegan v. Illinois*, 406 U.S. 964, 32 L.Ed.2d 663.

The court in *People v. McCollough*, was apparently unaware of the Keegan case since it was not discussed. We would further point out that *Olsen v. Delmore*, 48 Wash. 2d 545, 295 P.2d 324 was decided in 1956. Since that time in at least three decisions the Supreme Court of Washington has taken a contrary view thus overruling *Olsen*. In *State v. Boggs*, 57 Wash.2d 484, 358 P.2d 124 (1961); in *State v. Saylors*, 422 P.2d 477 (1966); and in *State v. Barton*, 454 P.2d 381 (1969), the court held there was no denial of equal protection of the laws.

In *People v. Yonker*, the court held that the act of the legislature vested an unwarranted discretion in the city clerk and for that reason was invalid. That holding has no application here.

In *People v. Morrissey*, 52 Ill.2d 418, citing *People v. Coleman*, 45 Ill.2d 466, the court upheld the power of a State's Attorney to prosecute aggravated battery as a misdemeanor rather than as a felony.

■■ Defendant further argues that there is nothing in the statute to prevent the judge when sentencing from treating one person as a felon and another as a misdemeanant. She cites no cases. In *Williams v. Illinois*, 399 U.S. 235, 26 L.Ed.2d 586 the Court said, "Sentencing judges are vested with wide discretion in the exceedingly difficult task of determining the appropriate punishment in the countless variety of situations that appear. The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences."

Defendant next contends that the prosecution failed to prove the offense of indecent liberties with a child beyond a reasonable doubt. The

argument advanced is that the State failed to prove that defendant placed "her mouth on the penis of Basseroni for her sexual gratification." There was no direct testimony that the defendant's acts were sexually motivated, defendant in her confession stated that she didn't know why she did it and that she had been drinking.

Defendant was indicted under section 11—4 (a)(2) of the Criminal Code which provides:

> "(a) Any person of the age of 17 years and upwards who performs or submits to any of the following acts with a child under the age of 16 commits indecent liberties with a child:  *  *  *
> (2) Any act of deviate sexual conduct;  *  *  *."

Deviate Sexual Conduct is defined by section 11—2 of the Criminal Code to mean "*  *  *  any act of sexual gratification involving the sex organs of one person and the mouth or anus of another."

The intent with which an act is done may be inferred from the act itself and the surrounding circumstances, indeed if intent is not admitted it can only be shown by surrounding circumstances. (I.L.P. Criminal Law sec. 21.15.) A guilty intention may be inferred from a criminal act. The question is one of fact for the trier of fact. *People v. Cohn*, 358 Ill. 326, 331.

■■ Defendant further contends on appeal that she was under the influence of alcohol. The defense of intoxication cannot be raised for the first time on appeal. There is testimony that defendant was drinking but "no offer of proof concerning intoxication was ever made; thus defendant waived this defense at trial and may not now, for the first time, raise it on appeal." *People v. Nugara*, 39 Ill.2d 482, 489.

Defendant next contends that she was erroneously convicted and sentenced for multiple offenses arising out of the same event and that therefore the sentence (and conviction) for aggravated battery should be reversed.

■■ Under the facts of this case, defendant's conduct was clearly separable. The crime of indecent liberties with a child was complete when she placed her mouth on the boy's penis. Subsequent to this she shoved the toilet brush handle into the boy's rectum. Although the time lag was minimal, there were two distinct and separate acts, constituting two distinct, and separate crimes for which different elements of proof were necessary. To commit the second act upon which the aggravated battery charge was based, she had to secure and use a weapon after she had completed the first act. In *People v. Johnson*, 44 Ill.2d 463, 475, the court stated:

> "However proper the application of the above statutory provisions may be in cases which would involve double punishment for the

same conduct where the same identical evidence is the basis for the finding of guilty of both charges, we believe they were not intended to cover situations in which more than one offense arises from a series of closely related acts and the crimes are clearly distinct and require different elements of proof."

Recently, in *People v. Harper*, 50 Ill.2d 296, 302, the court quoted *People v. Johnson* with approval and stated, "\* \* \* they were separate offenses for which concurrent sentences, were both constitutionally and statutorily permissible."

A hearing on a motion to suppress the confession was, by stipulation, held concurrently with the trial. Defendant testified that she was scared and ill during the interrogations, she was crying and holding her side in pain, she felt the police could do anything they wanted to her, she never understood her rights, she was told she couldn't get bond until she went to court, she confessed because she was afraid that her son (aged 3) had done it, she wanted to get out and see a doctor.

■■■ Defendant contends that the trial court erred in refusing to hear evidence which would corroborate her claim that she was in pain when she gave her confession. An offer of proof was made that on the 13th the defendant was taken to hospital where she had a miscarriage. The trial court refused to hear this testimony about the state of defendant's health after the confession on the ground that it was irrelevant. Did the trial court unduly limit the scope of the preliminary hearing? "The basic inquiry is whether or not the confession in question was voluntary. The determination of this question depends not upon any one factor, but upon the totality of all the relevant circumstances. Thus, the scope of inquiry at the preliminary hearing must be sufficiently broad to place before the trial judge all the relevant circumstances surrounding the taking of the confession and bearing upon the question of voluntariness. The precise scope of the preliminary hearing necessary to determine whether or not a confession is voluntary will depend upon the circumstances of each case." *People v. Nemke*, 23 Ill.2d 591; 29 Am.Jur.2d Evidence, Sec. 585.

On direct examination defendant was asked if she had asked to see a doctor. She said, "No". On cross-examination she was asked if she had ever complained of pain and she answered, "No". Nine police officers and defendant's husband had occasion to talk to and observe her at various times on the 6th and 7th. In all the testimony, no one including her husband was aware of pain or even that something physical was bothering defendant.

■■ The trial judge heard these witnesses and further he listened to her taped confession. We believe that he correctly decided that testimony

about a miscarriage six days after the confession was not probative as to her mental state during the confession.

■■ Defendant lastly contends that her sentence for aggravated battery was excessive in that section 12—4(b)(1) only provided for a five year maximum and further that the minimum should be reduced to one third of the five year maximum. The State has agreed that this contention is well founded and agrees that the sentence on the aggravated battery should be so modified. Accordingly, we reduce the sentence for the aggravated battery count to a minimum of one and two-thirds years and a maximum of five years.

In all other respects the judgments of the Circuit Court of Will County are affirmed.

Affirmed except as modified.

ALLOY, P. J., and SCOTT, J., concur.