THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* QUINTEN DALE PORTER, Defendant-Appellant.

(No. 74-220;

Fifth District—May 2, 1975.

David K. Stalker, of Williamson, Stalker & Webster, Ltd., of Alton, Groshong Law Office, Ltd., East Alton (Donald E. Groshong, of counsel), for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

This is an appeal from a judgment finding the defendant guilty of the offense of murder and sentencing the defendant to a term of imprisonment of not less than 14 nor more than 16 years. The defendant was indicted for the alleged offense with codefendants Roosevelt Nelson, Rozelle Williams and Carl Darnell Nelson. Rozelle Williams pled guilty to the offense in a separate proceeding. Carl Darnell Nelson was tried separately and found guilty of the offense charged. Roosevelt Nelson was given immunity from prosecution. The defendant waived a trial by jury and was tried by the court. He was represented by the public defender.

The defendant contends on appeal that his conviction must be reversed because he was not proven guilty beyond a reasonable doubt.

Defendant counsel and the State's attorney stipulated to several facts at the beginning of the trial. It was agreed that Derome Tyus was dead, that his death was caused by two gunshot wounds to the back of his head, that the date of the death was November 5, 1973, and that the place of death was the riverfront at the city of Venice, Illinois. It was further stipulated that certain bullet fragments found near the scene of the shooting had been fired from a gun which had been in the possession of Carl Nelson on the evening in question. It was also stipulated at the close of the State's case that Rozelle Williams shot Derome Tyus to death on the date in question.

Roosevelt Nelson and Carl Nelson were called as witnesses for the State. Ralph Brawley, the chief of police in Venice, Illinois, also testified for the State. Brawley identified a video tape recording as a taped conversation between himself and the defendant on November 5, 1973. The tape was played as part of the State's case. The defendant testified on his own behalf.

All witnesses were in agreement concerning most relevant facts. At about 12:30 or 1 A.M. on November 5, 1973, the defendant arrived at Garrett's Tavern in West Madison, Illinois. He was accompanied by Rozelle Williams and two females. Also in the tavern at this time were Carl Nelson, Roosevelt Nelson and Derome Tyus. At about 1 A.M. an argument developed between Tyus and Carl Nelson outside the tavern. After the argument Tyus departed from the area on foot. Williams then asked the defendant to leave the tavern and go for a drive. It is not known whether the defendant knew at that time that there had been an argument. The defendant left the tavern with Williams, Carl Nelson and Roosevelt Nelson. The four men entered the defendant's car and began driving around town. The defendant did the driving, Roosevelt Nelson sat in the front passenger seat, and Williams and Carl Nelson sat in

the back seat. After driving for a few minutes, Carl Nelson yelled that he saw Tyus, the car was stopped and Williams and Carl Nelson jumped out of the car. Tyus then began running away, and Carl Nelson gave chase while Williams stood near the car. A short time later Tyus and Carl Nelson walked back to the automobile. The defendant saw a gun in Carl Nelson's hand at this time. The gun was being pointed at the ground. Tyus, Williams and Carl Nelson then entered the back seat of the defendant's automobile.

The defendant began driving the car, and an argument ensued in the back seat. No witness gave testimony concerning the nature of the argument. The defendant testified that he heard Carl Nelson say that he was going to let Tyus go this time. According to the defendant, Williams then stated, "No, we're not going to let him go." The defendant then drove the car to a levee area in Venice, Illinois, where Williams, Tyus and Carl Nelson got out of the car. The three men walked a few feet behind the car, and Tyus was shot to death a few minutes later. The defendant and Roosevelt Nelson each testified that they were in the car at the time of the shooting and that they did not see who shot Tyus. Carl Nelson testified that Williams did the shooting. Immediately after the shooting, Williams and Carl Nelson got back into the car, and the four men left the area.

The testimony of the witnesses is conflicting in a few respects. The defendant stated that he drove the car pursuant to the directions of Williams. He stated that he was going to drive back to Garrett's Tavern after Tyus was forced in the car but that Williams told him to drive to the levee. Roosevelt Nelson testified that he did not remember any person telling the defendant where to drive the car.

The defendant also testified that he left his car for a few moments after the car was stopped at the levee area. He claimed that he got out of the car and told Williams, Tyus and Carl Nelson that the men should get together and work their problems out. The defendant further testified that Williams responded by stating that he did not want to hear that type of talk. The defendant alleges that he then got back into the car and that he heard the shots a few moments later. Roosevelt Nelson testified that the defendant did leave the car for a minute after the car was stopped at the levee area and that he returned to the car before Tyus was shot. Carl Nelson testified that the defendant never left the car at the levee area.

The defendant was accused of being a principal to the offense of murder pursuant to the doctrine of accountability. Section 5—2 of the Criminal Code (Ill. Rev. Stat., ch. 38, par. 5—2), provides in pertinent part:

"A person is legally accountable for the conduct of another when:
\* \* \*

(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."

An element of section 5—2(c) is that the defendant must act "with the intent to promote or facilitate" the commission of an offense. The defendant contends that he was not proven guilty beyond a reasonable doubt because the evidence does not establish that he possessed the intent to promote or facilitate the offense of murder. He contends further that he should not have been held accountable for the actions of Williams or Carl Nelson.

■■ The requisite mental state for a crime may be proved by the acts and circumstances surrounding the defendant's conduct. (*People v. Barrington*, 15 Ill.App.3d 445, 304 N.E.2d 525.) The question of intent is one of fact for the trier of fact. *People v. Chambers*, 15 Ill.App.3d 23, 303 N.E.2d 24.

■■■ While mere presence at the scene of a crime does not render a person a principal of the crime, it is well established that one may aid and abet without actively participating in an overt act. (*People v. Nugara*, 39 Ill.2d 482, 236 N.E.2d 693.) The fact that the criminal acts were not committed pursuant to a preconceived plan is not a defense if the evidence indicates involvement on the part of the accused in the spontaneous acts of the group. (*People v. Richardson*, 32 Ill.2d 472, 207 N.E.2d 478.) If the proof shows that the accused was present at the scene of the crime and did not disapprove or oppose it, the trier of fact may competently consider that conduct in connection with other circumstances and thereby reach the conclusion that the accused assented to the commission of the criminal act, lent to it his countenance and approval and was thereby aiding and abetting the crime. *People v. Richardson*; *People v. Murphy*, 17 Ill.App.3d 482, 308 N.E.2d 235.

■■ The evidence introduced in the instant case reveals that the defendant was more than a passive observer at the scene of the crime. The defendant voluntarily waited in his automobile while Carl Nelson chased Tyus. When Carl Nelson came back to the car with a gun in his hand and with Tyus at his side, the defendant became cognizant of the fact that Nelson possessed a deadly weapon and that the weapon had been used in apprehending Tyus. After Tyus was forced in the car the defendant heard a heated argument in the back seat. When Carl Nelson suggested that Tyus would be set free, Williams stated, "No, we're not going to let him go." No person in the automobile made any objection to Williams'

statement. Knowing that a heated argument had taken place, that Tyus had been forced into the car at gunpoint and that Williams did not intend to let Tyus go free, the defendant voluntarily drove the car to an isolated area. He passively sat in his car as Carl Nelson, Tyus, and Williams left the car. The defendant claims that he then got out of the car and suggested that the three men get together and work out their problems. When Williams rejected that suggestion, however, the defendant got back into his car without objecting. After Tyus was shot twice, Williams and Carl Nelson got back into the car and the defendant voluntarily drove away without questioning Williams or Carl Nelson about Tyus. We find that the facts and circumstances surrounding the defendant's conduct are such that the trier of fact was justified in finding that the defendant did possess the intent to promote or facilitate the offense committed. The proof also supports a finding that the defendant aided and abetted Williams and Carl Nelson in the commission of the offense and was thus accountable for the actions of his companions. For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Judgment affirmed.

EBERSPACHER and CARTER, JJ., concur.