2023 IL App (1st) 182621-U

SECOND DIVISION
March 28, 2023

No. 1-18-2621

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 16 CR 14882-02 |
| | ) | |
| MARKISE DORDIES, | ) | |
| | ) | Honorable Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*: We reverse defendant's conviction and remand for a new trial. The evidence offered at trial was sufficient to sustain a conviction for first-degree murder under an accountability theory. The trial court, however, abused its discretion when it denied defendant's motion to have private counsel represent him and instead obliged him to proceed with appointed representation. Therefore, the case is remanded for a new trial.

¶ 2    Defendant Markise Dordies was tried in a bench trial and convicted of first-degree murder under an accountability theory. On appeal, defendant argues, first, that the evidence was insufficient to prove his guilt for first-degree murder under an accountability theory. Second, he argues that the trial court violated his constitutional right to counsel of his choice when it denied

a prospective attorney leave to file an appearance prior to trial. And third, defendant argues that the trial court abused its discretion when it sentenced him to 29 years in prison. For the following reasons, we reverse defendant's conviction and remand for a new trial.

¶ 3                                    BACKGROUND

¶ 4      On April 30, 2016, Dietrick Stogner was shot and killed outside a currency exchange in Chicago. Stogner was a passenger in a car with Brant Davis, Gerald Williams, and Mario Voss when they stopped at a currency exchange located at 55th Street and Wentworth Avenue in Chicago. Voss remained in the vehicle while the other three men went into the currency exchange to get cash to buy dinner. As Davis, Williams, and Stogner exited the currency exchange and approached their vehicle parked outside, a gray SUV drove into their path and abruptly stopped in front of them. Defendant was driving the gray SUV. When the SUV stopped, Kashai Jones exited the vehicle from the front passenger seat with a gun in hand. Jones opened fire, and Dietrick Stogner was shot and killed. Defendant fled from the scene in the vehicle. He was arrested four months later and charged with first-degree murder under the theory of accountability.

¶ 5                              Substitution of Counsel

¶ 6      Following his arrest, defendant was charged and then arraigned on the first-degree murder charge on October 12, 2016. A private attorney, Brandon Brown Jr., represented defendant in the early stages of the case. On May 5, 2017, Attorney Brown filed a motion to withdraw as counsel for defendant, citing irreconcilable differences between the attorney and client. The case was continued on defendant's motion at court appearances in June and July 2017 for defendant to secure an attorney. When no private attorney appeared to represent defendant, an Assistant Public Defender, Edward Koziboski, was appointed to represent him. Koziboski

2

represented defendant at case management conferences and met with defendant to prepare for trial.

¶ 7     On October 11, 2017, the trial court continued the case to December 12, 2017 for the purpose of setting a trial date. At that December 12, 2017 court appearance, the court continued the case again to January 17, 2018 for the purpose of setting a trial date. At that January 17, 2018 court appearance, attorney Jeffrey Urdangen presented a motion seeking leave to appear in the case on defendant's behalf. In his motion, Urdangen and the Bluhm Legal Clinic from Northwestern School of Law indicated that they wished to represent defendant following a request from defendant's family. Urdangen represented in his motion that he had an informal scheduling conference with the court 14 days earlier and expressed his desire to file an appearance on defendant's behalf. Urdangen stated in his motion that he wished to substitute in as defendant's attorney, but he could not be ready for a trial for six months. Urdangen further stated in his motion that, during the informal scheduling conference, the trial court indicated that if it was going to take six months for counsel to prepare for trial, the court was not inclined to permit the substitution of counsel.

¶ 8     Upon receiving an indication of the court's position, Urdangen informed defendant's family. After being apprised of the court's position on Urdangen obtaining leave to file an appearance, defendant's family requested that Urdangen inquire again with the court about the possibility of filing an appearance in the case. Urdangen filed a written motion seeking leave to file an appearance but reiterated that he wanted to file an appearance with the court's understanding "that six months of preparation would be necessary before counsel could answer ready for trial."

¶ 9      Urdangen's motion seeking leave to file an appearance was presented and heard by the court on January 17, 2018. At the hearing on the motion to substitute counsel, the court explained that the case was before the court that very day for the purpose of setting a trial date. Urdangen expressed that he knew the trial judge had a busy call but asked for six months because he had other litigation commitments and because he would need some time to prepare for this murder trial. Urdangen stated that he asked for the six months "with the promise that [he] can be ready for trial" at that point.

¶ 10      The trial court explained that Cook County taxpayers were going to have to pay $27,000 to keep defendant in custody while waiting for counsel to be ready for trial. The trial court indicated that it did not feel comfortable delaying the proceedings for that long because the case was before the court for purposes of setting a trial date. The court informed Urdangen that if Urdangen "want[ed] to pay for incarceration, that's fine, but [the court does not] feel comfortable charging Cook County taxpayers $27,000." The court explained that both Urdangen and the assistant public defender assigned to the case are "very competent attorney[s]," so defendant "is not being deprived of anything." The court also noted that defendant never got an attorney through June and part of July when the case was continued for that purpose. The trial court denied the motion for substitution of counsel.

¶ 11      Following the trial court's ruling, the assistant public defender representing defendant explained that he would be asking for a trial date three months away. The assistant public defender also expressed concern about defendant not having the right to his choice of counsel and how that might affect the proceedings going forward. The trial court responded, "what about Cook County? Don't the Cook County taxpayers have a right not to squander the money?" The assistant public defender argued that defendant's right to counsel trumps the right of Cook

County taxpayers. The trial court confirmed with Urdangen that he would not be ready for trial until July. The trial court set the case for trial for April 27, 2018.

¶ 12    Right after the trial date was set, defendant himself addressed the court and asked if he could "please have Jeff Urdangen to be [his] representation." The trial court explained that "it's going to cost the county $27,000 to wait 'til he's available. If he was available, I'd put him on right now, but he's not available. So the cost and it's also discretionary on my part, so you got outstanding attorneys here." Defendant proceeded to trial represented by the Public Defender's Office. The trial began on May 24, 2018.

¶ 13                                Trial Evidence

¶ 14    Defendant waived his right to a jury trial and the matter proceeded to a bench trial. At trial, Brant Davis testified that he, Deitrick Stogner, Jerald Williams, and Mario Voss had plans to go eat together and stopped at the currency exchange on their way to the restaurant. Davis was driving and the men were traveling in a black Audi SUV. Davis, Stogner, and Williams went into the currency exchange while Voss stayed back in the vehicle. Once the men were finished inside the currency exchange, they walked back towards their vehicle. Right before they reached their vehicle, a dark gray SUV pulled directly in front of them and came to an aggressive halt, stopping in their path.

¶ 15    Davis testified that Kashai Jones exited the front passenger side of the gray SUV holding a gun. Davis, Stogner, and Williams began running away, and Davis heard multiple gunshots coming from where Jones was located. He testified that neither he nor his friends were armed. As they attempted to run from the gunfire, they ran in front of the gray SUV defendant was driving. When they were in front of the SUV, it moved forward, striking Davis as he attempted to flee. Davis escaped and ran onto the nearby expressway to escape the situation. He later returned to

the scene once police arrived and he spoke to the officers. Davis then went to the hospital and learned that Stogner had died in the shooting. Davis did not see who was driving the SUV, but he identified Kashai Jones as the shooter.

¶ 16    Ronald McCormick testified that he was in the SUV with defendant and Kashai Jones before the shooting. Defendant was driving the vehicle and McCormick was in the backseat with Marshawn Scott. Jones was in the front passenger seat. As they were driving around and smoking marijuana, defendant got a phone call. McCormick did not hear the full content of the conversation and did not know who was on the other end of the phone call, but he heard defendant mention a "truck." After receiving the phone call, defendant drove in the direction of the currency exchange. Defendant drove past the currency exchange parking lot and pointed out an Audi SUV that was located in the parking lot and said "there it go." Defendant then made a U-turn to circle back to where that Audi was located. After getting near the location of the Audi, defendant quickly stopped the vehicle and Jones exited with a gun. McCormick started hearing gunshots and he ducked down to the floor of the vehicle. McCormick heard seven gunshots and then defendant began to drive away.

¶ 17    McCormick testified that, after the shooting, defendant drove the vehicle onto the expressway, leaving Kashai Jones at the scene. Shortly after driving away from the scene of the shooting, McCormick asked defendant to stop so he could get out of the vehicle. McCormick exited the vehicle on the expressway ramp. He subsequently walked back to the scene of the shooting and was arrested by police.

¶ 18    The State introduced video evidence from surveillance cameras at the scene. The surveillance video evidence supports the State's witnesses' version of events. McCormick viewed the surveillance video from the witness stand and confirmed the events depicted in the

video, identifying the vehicles and the persons shown. The surveillance video shows the three men exiting the currency exchange and walking until they are abruptly cut off by an SUV. It shows those men running as Kashai Jones exits and raises a gun in the direction of the fleeing men.

¶ 19    The State further presented evidence that defendant fled after the shooting. Defendant was arrested four months after the shooting following a police investigation. Defendant never spoke to police about the incident prior to his arrest. Detectives located the gray SUV they believed was used during the shooting and defendant's fingerprints and DNA were recovered from the steering wheel.

¶ 20    Following the State's presentation of evidence, defendant moved for a directed finding which was denied. Defendant rested without presenting evidence. Following argument from the parties, the trial court found defendant guilty of first-degree murder. The trial court detailed defendant's actions and explained that defendant was accountable for the murder based on his conduct. Defendant filed posttrial motions which were denied. He was sentenced to 29 years in prison.

¶ 21                                        ANALYSIS

¶ 22    Defendant raises three issues on appeal. He argues: (1) the trial court erred in finding him guilty of first-degree murder by accountability where the evidence was insufficient to prove him guilty beyond a reasonable doubt; (2) the trial court violated defendant's Sixth Amendment right to counsel of his choosing when it denied private counsel leave to appear prior to trial; and (3) the trial court's sentence constitutes an abuse of discretion because the evidence was insufficient to prove his guilt and because insufficient weight was afforded to defendant's young age at the time of the offense.

¶ 23                    I. Sufficiency of the Evidence

¶ 24    Defendant argues that the State failed to provide sufficient evidence to prove beyond a

reasonable doubt that he committed first-degree murder under the theory of accountability. In

particular, defendant maintains that the State failed to introduce any evidence connecting Kashai

Jones's actions to defendant's actions, and he claims there was no evidence of a shared intent.

Defendant maintains that the State only proved defendant's guilt by association and argues that

the State utterly failed to meet its burden of proof.

¶ 25    The State must prove each element of an offense beyond a reasonable doubt. *People v.*

*Sams*, 2013 IL App (1st) 121431, ¶ 9. In assessing whether the evidence against a defendant

is sufficient to prove guilt beyond a reasonable doubt, a reviewing court must determine whether,

after viewing the evidence in the light most favorable to the State, any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt. *People v. Taylor*, 186

Ill. 2d 439, 445 (1999). A defendant's conviction should not be set aside on grounds of

insufficient evidence unless the proof is so improbable or unsatisfactory that a reasonable doubt

exists about the defendant's guilt. *Id.* It is not the reviewing court's function to retry the

defendant. *People v. Betance–Lopez,* 2015 IL App (2d) 130521, ¶ 40. It is for the trier of fact to

assess the credibility of the witnesses, determine the appropriate weight of the testimony, and

resolve conflicts and inconsistencies in the evidence. *People v. Johnson,* 2015 IL App (1st)

123249, ¶ 21. All reasonable inferences from the evidence must be drawn in favor of the

prosecution. *People v. Newton*, 2018 IL 122958, ¶ 24.

¶ 26    Section 5-2(c) of the Criminal Code of 1961 provides that a defendant is legally

accountable for the criminal conduct of another if "[e]ither before or during the commission of

an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets,

agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5-2(c) (West 2020). Furthermore, "[w]hen 2 or more persons engage in a common criminal design or agreement, any acts in the furtherance of that common design committed by one party are considered to be the acts of all parties to the common design or agreement and all are equally responsible for the consequences of those further acts." *Id*. "Mere presence at the scene of a crime does not render a person accountable for an offense; a person's presence at the scene of a crime, however, may be considered with other circumstances by the trier of fact when determining accountability." *Id*. To establish that a defendant intended to promote or facilitate a crime, "the State may present evidence that either (1) the defendant shared the criminal intent of the principal, or (2) there was a common criminal design." *People v. Fernandez*, 2014 IL 115527, ¶ 13.

¶ 27    We find that when the evidence is viewed in a light most favorable to the State, the prosecution provided sufficient evidence on which a factfinder could reasonably find defendant guilty beyond a reasonable doubt. The evidence showed that defendant was driving a dark gray SUV with Kashai Jones, Ronald McCormick, and Marshawn Scott as passengers. They were driving around aimlessly, smoking cannabis, until defendant received a phone call mentioning a truck. After receiving the phone call, defendant switched from driving aimlessly to driving to a location purposefully. When defendant saw the gray Audi SUV the victim was in, he said "there it go" which McCormick, and the trier of fact, understood to be an identification of the truck defendant was looking to find.

¶ 28    After locating the Audi, defendant drove in the path of three men walking from the currency exchange to that Audi. Defendant stopped his vehicle in the path of the three men who were trying to reach their own vehicle, cutting them off. At that time, Kashai Jones exited the

vehicle and opened fire. There was testimony that as the victims were trying to run from the gunfire, defendant pulled the SUV forward and struck one of the men attempting to flee. After the shooting, defendant fled the scene, never spoke to police, and was not arrested until four months later. After the initial flight, McCormick asked defendant to stop so McCormick could exit the vehicle. McCormick returned to the scene and spoke to police, while defendant let McCormick out of the vehicle and continued his flight.

¶ 29      The evidence showed that defendant shared the criminal intent of Jones, and he took several actions consistent with promoting, facilitating, aiding, and abetting Jones's murder of Stogner. See *People v. Porter*, 28 Ill. App. 3d 411, 414-15 (1975). Taking the evidence in a light most favorable to the State, defendant was not a mere bystander as he suggests; he was an active participant in the murder. Defendant drove Jones to the currency exchange and pointed out the vehicle they were looking to locate. Defendant then circled back around to approach the victims' vehicle and took an active role in positioning his vehicle between Stogner, Davis, and Williams and their own vehicle. Defendant's actions gave Jones access to fire at the three men and limited their escape. Defendant also drove his car forward either to further limit the men's escape or cause harm to them directly. The question of intent is one of fact for the trier of fact. *Id*. Here, there was ample evidence from which the trier of fact could have reasonably found that defendant possessed the requisite intent to be held criminally responsible.

¶ 30      Moreover, the trier of fact may infer accountability from the circumstances surrounding the perpetration of the unlawful conduct, including, among other things, the defendant's presence during the commission of the offense, the defendant's failure to report the incident, and the defendant's flight from the scene. *People v. Batchelor*, 171 Ill. 2d 367, 376 (1996). These considerations along with all the other circumstantial and direct evidence and the reasonable

inferences flowing therefrom provided sufficient evidence for a rational trier of fact to find that the evidence proved defendant's guilt beyond a reasonable doubt.

¶ 31    Defendant contends that this case is similar to *People v. Johnson*, 2021 IL App (1st) 171885, ¶¶ 68-70 wherein we found insufficient evidence to support a murder conviction on the theory of accountability. In *Johnson*, we found that nondescript phone records showing several calls between an alleged shooter and the defendant before the shooting did not constitute proof that the defendant should be accountable for the shooter's actions. *People v. Johnson*, 2021 IL App (1st) 171885, ¶ 97. Here, defendant maintains the information about the phone call defendant received prior to the shooting was insufficient to support his conviction. He points out that there was no testimony about who called defendant and no phone records to back up the existence of the call. Defendant also points out that McCormick was impeached during his testimony about the call with a prior inconsistent statement in which he stated that Kashai Jones was the one who said "there it go" referring to finding the target SUV. Defendant contends that "if [he] did not say 'there it go' and instead Mr. Jones said those words, then there is nothing linking [defendant] to Mr. Jones' criminal intent."

¶ 32    The evidence and circumstances of this case make it easily distinguishable from *Johnson*. In *Johnson*, only the phone records themselves existed to evidence the alleged calls. Here, we have direct evidence from a co-occupant in the vehicle that the call occurred. The trial court accepted the testimony and credited it. There was also significant evidence about what defendant did in response to getting the phone call. After receiving the call, defendant switched from driving without a purpose to driving with a destination in mind. As the trial court observed, the phone call, the existence of which was supported by direct evidence, set into motion the events that later resulted in the death of Stogner. As for the impeachment of who said "there it go" in

regard to finding the vehicle, defense counsel pointed out the inconsistency during the presentation of evidence. The trier of fact was aware of the impeachment presented and nonetheless found the totality of the evidence to demonstrate defendant's guilt beyond a reasonable doubt. There was evidence from which the trier of fact could determine that defendant shared Jones's criminal intent and there was evidence that defendant took actions in accordance with that intent to further the commission of the crime.

¶ 33    Defendant also argues that it cannot be clearly inferred that the "it" in "there it go" referred to the truck. However, McCormick's testimony evidenced that "there it go" meant that defendant and Jones had found what they were looking for. It is, at a minimum, a reasonable inference from the evidence that "there it go" referred to locating the Audi truck Stogner was occupying that day.

¶ 34    Defendant claims that the State's argument about defendant being culpable based on driving the car forward during the shooting is a new argument on appeal. Defendant contends that the trial court did not discuss this event when it presented its finding of guilt, so the trial judge "never made any factual determination to this piece of evidence during trial." Defendant maintains that the State is asking us to make a factual finding about the weight and credibility of Davis's testimony that defendant drove the car forward during the shooting. However, Davis clearly testified that defendant drove the car forward while Davis was attempting to run from the shooting and that defendant struck him with the vehicle. On review, we are charged with determining whether there was sufficient evidence from which a reasonable trier of fact could find the elements of the crime beyond a reasonable doubt. Just because the trial court did not specifically mention a piece of evidence when rendering its finding of guilt does not mean that the trial court did not consider it in arriving at the verdict. "The trier of fact in a bench trial is not

required to mention everything—or, for that matter, anything—that contributed to its verdict." *People v. Mandic*, 325 Ill. App. 3d 544, 546–47 (2001) (quoting *People v. Curtis,* 296 Ill. App. 3d 991, 1000 (1998)). "If the record contains facts that support the trial court's finding, the reviewing court may consider those facts to affirm the finding, even if the trial court did not state specifically that it relied on them." *Id*. Defendant has failed to demonstrate that no reasonable trier of fact hearing this evidence could find him guilty beyond a reasonable doubt.

¶ 35                              II. Motion for Substitution of Counsel

¶ 36    We initially address the State's argument that defendant's claim that he was denied choice of counsel was not preserved. The State contends that, although the issue was raised in a posttrial motion filed on defendant's behalf by the Public Defender's Office, the issue was not raised in the motion filed by the new counsel defendant retained for posttrial proceedings. This argument is not well-founded because it is clear the issue was raised in a posttrial motion and all the posttrial motions were consolidated before being heard by the court. Defendant's privately retained posttrial counsel expressly adopted the previously filed posttrial motion where defendant raised his claim that he was improperly denied his right to choice of counsel. Thus, the claim was adequately raised by defendant in a posttrial motion so as to preserve it for review.

¶ 37    Moreover, as acknowledged by the State, we have held that the denial of counsel of one's choice is a structural error which we may consider even if not properly preserved. See *People v. Howard*, 376 Ill. App. 3d 322, 337 (2007). "So fundamental is a defendant's right to a counsel of his or her choosing that its erroneous denial requires automatic reversal of a conviction without regard to harmless-error or prejudice analysis." *People v. Adams*, 2016 IL App (1st) 141135, ¶ 15 (citing *People v. Bingham*, 364 Ill. App. 3d 642, 649 (2006)). Thus, we proceed to the merits of defendant's claim that he was improperly denied his right to counsel of his choice.

¶ 38    Defendant argues that the trial court violated his Sixth Amendment right to counsel of his choosing by denying Jeffrey Urdangen's motion for leave to file an appearance in the case. The Sixth Amendment to the United States Constitution, as well as Article I, Section 8 of the Illinois Constitution, guarantee that, in all criminal prosecutions, the accused has the right to the assistance of counsel, which includes the right to counsel of the defendant's choosing. U.S. Const., amend. VI; Ill. Const. 1970, art. I § 8; see also *U.S. v. Gonzalez-Lopez*, 548 U.S. 140, 147-48 (2006). We have described a defendant's right to counsel of choice as "an absolute right" and explained that the right is only to be limited "when abused," such as to thwart or delay the administration of justice. *People v. Childress*, 276 Ill. App. 3d 402, 410 (1995) (quoting *People v. Young*, 207 Ill. App. 3d 130, 133-34 (1990)).

¶ 39    The determination of whether to grant a continuance for substitution of counsel is reviewed for an abuse of discretion. *People v. Segoviano*, 189 Ill. 2d 228, 245 (2000). The factors to be considered in evaluating a trial court's exercise of its discretion in denying a motion for substitution of counsel include the diligence of the movant, the right of the defendant to a speedy, fair and impartial trial, and the interests of justice. *Id*.

¶ 40    In balancing the judicial interest of trying the case with due diligence and the defendant's constitutional right to counsel of choice, the court must inquire into the actual request to determine whether it is being used as a delaying tactic. *People v. Tucker*, 382 Ill. App. 3d 916, 920 (2008). Other factors for consideration include: whether the defendant articulates an acceptable reason for desiring new counsel; whether the defendant has continuously been in custody; whether the defendant has informed the trial court of her efforts to obtain counsel; whether the defendant has cooperated with current counsel; and the length of time the defendant has been represented by current counsel. *Childress*, 276 Ill. App. 3d at 411.

¶ 41    In this case, the trial court made no initial inquiry as to whether defendant's request for substitute counsel was a tactic to delay the proceedings. We have held that it is mandatory for the trial court to evaluate the request and determine if it has been made for the purpose of delay. *People v. Jenkins*, 2020 IL App (1st) 172422, ¶ 14. Likewise, the trial court did not make any inquiry into the other factors our supreme court has laid out for evaluating a motion for substitution of counsel in a criminal case. Such an inquiry is mandatory. See *Adams*, 2016 IL App (1st) 141135, ¶¶ 16-17.

¶ 42    The considerations for evaluating a motion for substitution of counsel include the diligence of the movant, the right of the defendant to a speedy, fair, and impartial trial, and the interests of justice. *Segoviano*, 189 Ill. 2d at 245. In this case, the trial judge made the decision to deny defendant's motion for substitution of counsel solely based on the cost of incarcerating defendant until time of trial. The assistant public defender and defendant himself asked the trial judge to reconsider, but the trial judge again repeated that the cost of incarcerating the defendant prior to trial doomed defendant's request.

¶ 43    An abuse of discretion can be found where the court applies the wrong legal standard or uses the wrong legal criteria. *Callinan v. Prisoner Review Board*, 371 Ill. App. 3d 272, 277 (2007); *Shulte v. Flowers*, 2013 IL App (4th) 120132, ¶ 23. In this case, the trial court made its decision whether to allow substitution of counsel based on the cost to incarcerate defendant prior to trial. This consideration has never been cited in any court cases as a consideration, let alone as the overriding basis for denying a defendant his chosen counsel.

¶ 44    The assistant public defender assigned to defendant's case required at least three months from the date of setting the trial until he was going to be ready for the trial to begin. The case actually went to trial on May 24, 2018, and Urdangen averred when he sought leave to appear

that he would have been ready to go to trial in this case in July. Defendant was facing a prison sentence of possibly decades. Defendant was denied counsel of his choice because his desired counsel required just a few additional weeks to be prepared.

¶ 45     At the time Urdangen filed his motion and asked for leave to appear, the case had not yet been set for trial, but set to schedule a date for trial. Defendant secured a specifically identified attorney who made an express commitment to represent defendant and go to trial at a definite time. Urdangen specified the other litigation commitments he had scheduled and the need for some time to get ready for trial in this case. The trial court had the opportunity to inquire further into defendant's request for new counsel while having the prospective attorney, the assigned attorney, and defendant himself all present for a hearing on the motion. The trial court did not inquire as to the reason for defendant's request to change attorneys and instead remained fixated on the cost of incarceration. The record seems to indicate that defendant's family and defendant personally had a sincere desire for Urdangen to represent him, not that defendant was trying to delay the trial. The trial court abused its discretion when it denied defendant his right to proceed with counsel of his choosing.

¶ 46                                       III. Sentencing

¶ 47     Because we find that defendant is entitled to a new trial, we do not reach his claim regarding the propriety of his sentence.

¶ 48                                       CONCLUSION

¶ 49     Accordingly, we reverse defendant's conviction and, because we find the evidence sufficient to convict defendant, we remand the matter for a new trial.

¶ 50     Reversed and remanded.