(No. 43484.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ROBERT STOCK *et al.,* Appellants.

*Opinion filed March 20, 1974.*

Paul Bradley and Robert Davison, Illinois Defender Project, and Michael P. Toomin, all of Chicago, for appellants Robert and Dianne Stock.

James J. Doherty, Public Defender, of Chicago (Stanton Bloom, Assistant Public Defender, of counsel), for appellant Charles Wilfong.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel, Assistant Attorney General, James S. Veldman, Assistant State's Attorney, and Eugene R. Wedoff (Law Student), of counsel), for the People.

MR. JUSTICE DAVIS delivered the opinion of the court:

The defendants, Robert Stock, Charles Wilfong and Dianne Stock, were tried on a two-count indictment in the circuit court of Cook County, which charged them with armed robbery and burglary. Dianne Stock was acquitted on the armed robbery charge and all three defendants were convicted on the burglary charge. Dianne Stock was sentenced to one to three years in the penitentiary. Robert Stock and Charles Wilfong were convicted on both counts, and each was sentenced to 20 to 40 years. This is a direct appeal from the circuit court of Cook County. Jurisdiction

here is based on the existence of a constitutional question; the notice of appeal was filed before the amendment of Supreme Court Rule 302.

A common fact situation applies to all three defendants. Roger Sticken and Janet Meyer lived together in an apartment at 1517 West Byron Street in Chicago in December of 1968. One evening, when Janet Meyer was alone in the apartment, Dianne Stock came to the door at about 10:00 P.M. and said she was looking for Roger Sticken. Janet Meyer had not seen Dianne Stock previously, but allowed her to come inside to wait for Sticken. After having a drink, Dianne Stock said she was going to the store and Janet Meyer gave her some money and a short list of items to be purchased.

Approximately 15 minutes later, Dianne Stock returned and rang the doorbell. Janet Meyer looked out, saw her, and opened the door to let her in. When the door was opened, two unmasked men, at least one of whom was armed, pushed their way into the apartment, tied, blindfolded and robbed Janet Meyer and took from the apartment items of personal property which belonged to Sticken and Meyer.

After the two men had departed taking Dianne Stock with them, Janet Meyer worked herself free and ran outside, where she located a policeman. Dianne Stock had sounded as though she had been gagged, but Janet Meyer could see through the corner of her blindfold, and she testified that Dianne Stock was neither gagged nor physically restricted.

The defendants do not refute these facts. Rather, they attempt to raise the defense that they had been hired by Roger Sticken to steal his goods so that he could collect the insurance proceeds thereon. Besides this specific defense, the defendants also raise various procedural and substantive reasons why their convictions should be reversed.

Defendants Robert Stock and Charles Wilfong argue

that since Dianne Stock was acquitted on the armed robbery charge and since the testimony of Janet Meyer was the only proof which related to that charge, Dianne Stock was acquitted on the identical evidence on which they were found guilty, and the verdicts are inconsistent and their respective convictions for armed robbery must be reversed. We do not agree.

Dianne Stock's role in the robbery was passive and different from that of the armed male defendants.

Inconsistency in verdicts may arise from the nature of the particular offense charged, or from the relationship shown to have existed between the parties. The inconsistency alleged here is of the latter type. Consistency is not necessary in criminal verdicts.

The defendants urge that the evidence was insufficient to establish their guilt beyond a reasonable doubt; and that they should not be convicted of armed robbery, or indeed of anything at all.

The general rule in Illinois and the majority rule elsewhere is that the failure of a jury to convict one co-defendant does not raise a reasonable doubt as to the guilt of the other co-defendants. (*People v. Rogers* (1959), 16 Ill.2d 175; Annot. (1968), 22 A.L.R.3d 720.) For a reasonable doubt to be raised in such cases, it must be shown that the evidence given against all of the defendants is identical in all respects. (*People v. Mirabella* (1920), 294 Ill. 246, 248.) Such is not the case here.

The acquittal of one of two or more jointly indicted defendants is no reason why the other defendant cannot be convicted. In *People v. Stone* (1963), 213 Cal. App. 2d 260, 28 Cal. Rptr. 522, the court affirmed the appellant's convictions of murder and robbery, even though a co-defendant had been acquitted of murder and convicted of robbery. The evidence had shown that the appellant, and not the co-defendant, had fired the fatal shot. The appellant argued that the jury had made an improper discrimination in convicting only him of murder and

robbery because, under the law, if the co-defendant was guilty of robbery, he was also responsible for the resulting murder. While the court agreed that the jury's verdict was in fact inconsistent, it noted that it may be explained by the jury's reluctance to convict of murder someone who had not fired a shot, so that the discrimination was not against the defendant but against the law.

In the case at bar, the fact that the jury did not convict Dianne Stock on the armed robbery charge is no reason for reversing the verdicts against Robert Stock and Charles Wilfong. *People v. Hovnanian* (1962), 16 App. Div. 2d 818, 228 N.Y.S.2d 771, *cert. denied* (1963), 373 U.S. 939, 10 L. Ed. 2d 694, 83 S. Ct. 1544.

Defendants Robert Stock and Charles Wilfong were incarcerated at all times before trial, and they argue that they should have been discharged for failure of the People to comply with the terms of the 120-day rule (Ill. Rev. Stat. 1969, ch. 38, par. 103—5(a)), which provides:

> "(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant, by an examination for competency ordered pursuant to Section 104—2 of this Act, by a competency hearing, by an adjudication of incompetency for trial, by a continuance allowed pursuant to Section 114—4 of this Act after a court's determination of the defendant's physical incapacity for trial, or by an interlocutory appeal."

All of the parties agree that the relevant 120-day period began to run on January 16, 1970. However, there is no agreement as to what constitutes the start of a trial for the purposes of this statutory provision, or, assuming the trial had not been started on time, as to whether or not the delay was attributable to the defendant. We will consider only this latter disputed point.

Delay here was attributable to the defendant, even if trial was started on the 124th day. The court took the case on May 14, 1970, the 118th day of the relevant period.

The defendants' pretrial motions, or ones substantially the same, had been on file for many months prior to May 14. The defendants claim that the practice or custom in criminal trials in Cook County is that all "pretrial" motions are heard immediately before the "trial." This is said to be a matter of accommodation, so that witnesses need not be brought in twice.

This court has previously stated that, "In the varied fact situations which involve the 120-day rule, we have carefully examined the facts to prevent 'a mockery of justice' either by technical evasion of the right to speedy trial by the State, or by a discharge of a defendant by a delay in fact caused by him." (*People v. Fosdick* (1967), 36 Ill.2d 524, 528-529.) It appears that here the only parties not ready for trial within the 120-day period were the defendants. The defendants' consideration and generosity in attempting to avoid inconvenience to witnesses does not relieve them of the responsibility of having their pretrial motions heard. We need not discuss at length the cases cited by the defendants because they are not inconsistent with the approach enunciated in *Fosdick* and turn on their respective facts. We would note, however, that the defendants' failure to seek an earlier hearing on their pretrial motions leaves those motions in a situation analogous to motions made on the eve of trial. Such motions may be considered to cause delay. (*People v. Rankins* (1960), 18 Ill.2d 260, 262.) Had the defendants been diligent, the trial would have begun on the 118th day, and they would have been accorded all the protection provided by the statute.

The defendants claim that they were deprived of a fair trial by the prejudicial closing arguments of the prosecutors. We agree.

The prosecutors of this State have a substantial amount of leeway in this regard. In *People v. Wright* (1963), 27 Ill.2d 497, at pages 500 and 501, the court stated: "It is proper for the prosecuting attorney to reflect

unfavorably on the accused, and to denounce his wickedness and even indulge in invective; he may dwell on the evil results of crime and urge a fearless administration of the law. [Citations.] " (Also see: *People v. Hairston* (1970), 46 Ill.2d 348, 375; *People v. Ostrand* (1966), 35 Ill.2d 520, 531-532.) The prosecuting attorneys in the case before us, not only went outside of the record in their argument, but also accused the defense attorneys of making up the defense case and suborning perjury, and commented on the fact that two of the defendants had not taken the stand to testify.

In order to clarify what was objectionable in the prosecutor's closing arguments, we will set forth several excerpts therefrom:

> "Mr. Magnes: From the very beginning, Mr. Toomin and Mr. Bloom [the defense attorneys] with very little investigation realized that unfortunately the State was saddled, and I say that advisedly, with witnesses who are less than perfect in terms of character or reputation, and being experienced Defense attorneys, they grabbed at it like an animal at his prey."

The defense objection to this was sustained, yet the prosecutor continued:

> "Mr. Magnes: We saw it coming. We knew what was about to develop during the course of this trial.
>
> Mr. Bloom: Objection.
>
> The Court: I will sustain the objection. Please confine yourself to the evidence, Mr. Magnes.
>
> Mr. Magnes: Yes, your Honor. I believe it is fair comment.
>
> The Court: I sustained the objection."

The prosecutor assured the jury that they would not have been picked if the State had not been convinced that they would not fall for the defense case, and went on to say:

> "Mr. Magnes: Now, that was given to you early in the stages of this trial before a single word of evidence was heard. That was given to you. That was told to you very politely during the opportunity to make opening statements to you, but during the course of this trial they

participated in their endeavor to politely shove it down your throats.

Mr. Bloom: Object, your Honor.

The Court: I will sustain the objection. Mr. Magnes, I would appreciate it if you would confine yourself to the evidence in this case.

Mr. Magnes: Yes, your Honor, I am attempting to do so. So very early in this case, you saw the tactic and the strategy being developed."

The prosecution then referred to charges of character assassination by defense counsel:

"Mr. Magnes: More importantly, what do you think about his [Officer Muzzarelli] taking the witness stand under these circumstances and being able to anticipate what very well might be occurring while he is under the scathing cross examination of Mr. Toomin and Mr. Bloom, based upon what he can anticipate occurring? He is a police officer and holds a position of trust in this community. Although his association with Janet Meyer was above-board and legitimate and to be respected, based upon his testimony, can you foresee him having to concern himself with the character assassination that might be imposed upon him?

Mr. Bloom: Objection, your Honor, as to what might be.

The Court: I will sustain the objection. Please confine yourself to the evidence, Mr. Magnes.

Mr. Magnes: But nevertheless he took the witness stand and he testified."

This line of argument was followed by Mr. Elsener, the other prosecutor.

"Mr. Elsener: Now, ladies and gentlemen, as has been indicated, we ask each one of you to eliminate sympathy and prejudice from your minds. I think in this case it is extremely clear why. All those remarks and all that stuff about Janet and her occupation was aimed at five of you jurors. It was an attempt to prejudice you.

Answer me this. Remember those questions of Al, the bartender? What did the girls wear in the place? Remember those like good old Mr. Toomin and Mr. Bloom? The fair defense lawyers.

Mr. Bloom: Object.

Mr. Toomin: Objection, your Honor.

Mr. Bloom: I ask he be admonished. This is the second time he has done it and I don't think I have to tolerate it.

The Court: Objection overruled. Proceed.

Mr. Bloom: I ask to be heard.

The Court: Overruled."

The prosecutor then proceeded in argument:

"Mr. Elsener: *** And with a straight face, with a straight face defense counsel said, and she worked in a den, in a den. Why do you think they used words like that? To encourage sympathy for Janet Meyer? or to shift the light, get it away from the defendants. *** I'll say it's the most incredible defense that this whole court room has ever seen.

Then good old Charles Liphardt, innocent, uninterested Charles Liphardt, he comes in and he corroborates Dianne. You have to believe Dianne because of Charles Liphardt. Charles Liphardt can say anything he wants, because if he doesn't she will go to his wife.

Mr. Toomin: Object.

Mr. Bloom: Object.

The Court: Mr. State's Attorney, I sustain the objection. Strike the remark and instruct the jury to disregard it. There is no evidence of that.

Mr. Elsener: Fine, ladies and gentlemen —

The Court: I must direct you to confine yourself to the evidence in this case.

Mr. Elsener: Fine, and the evidence shows he has known her for two years. The evidence shows he is married, the evidence shows he goes over and meets her over at her friend's. The evidence shows that her husband doesn't know where she is and she doesn't know where her husband is. The evidence shows that he just drives her around and the evidence shows he doesn't testify to some of the most important things in the case until after he goes to lunch with the good old defense lawyers."

Thus, the prosecution then went on to indirectly accuse the defense lawyers of suborning perjury.

"Mr. Elsener: What do you do when you're caught? What do you do when you're guilty? What is the first thing you do if you haven't got anything else to rely on,

you start accusing everybody else, put a finger on them, them, them, them, and them. Get the light off you, get the heat off you, keep in the background, sit back there nice and quiet behind your lawyers and don't do anything.

Mr. Toomin: Object.

Mr. Bloom: Object.

The Court: Sustain the objection.

Mr. Bloom: I ask that he be admonished for that conduct.

The Court: Yes, Mr. Elsener, I will strike the remark and instruct the jury to disregard it and I do admonish you."

"Mr. Magnes: *** You have the defendants' case. There very briefly you have the testimony of Dianne Stock. Now, I sat here and listened to the testimony of Dianne Stock, as well as the rest of it. The defendants got together and decided to make Dianne Stock their hope and so she picked herself up off that chair and took the witness stand.

Mr. Toomin: Your Honor, I will object to what the defendants did.

The Court: I will sustain the objection, strike the reference, and I instruct the jury to disregard it.

Mr. Magnes: She paraded to the witness stand, took a seat, and described the facts and circumstances of this grand plan, as Mr. Robert Stock and Mr. Charles Wilfong sat silently by.

Mr. Toomin: I object to that, your Honor.

The Court: I will sustain the objection and strike the reference and instruct the jury to disregard it."

That it is improper to refer to a defendant's failure to take the stand was established by *Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 Ct. 1229, and by *People v. Wollenberg* (1967), 37 Ill.2d 480.

In some instances the objections of the defense attorneys were sustained and the jury was instructed to disregard the argument; in other instances the objections were overruled. The repeated disregard of the bounds of proper argument was so flagrant and purposeful that we can only conclude that it was done for the purpose of

prejudicing the defendants. Such behavior should not be tolerated by the courts of this State.

In *People v. Freedman* (1954), 4 Ill.2d 414, at page 422, this court stated: "Arguments of a prosecutor which charge a defendant's counsel with attempt to free his client by trickery tend to deprive the accused of a fair trial and should not be permitted. (*People v. Savage,* 358 Ill. 518.)" In *Savage,* at page 522, this court stated: "The law requires that a fair trial shall be given one accused of crime, and such remarks cannot be permitted if the rule is to be observed. This is true regardless of his guilt or innocence."

In *People v. Polenik* (1950), 407 Ill. 337, this court, in considering the argument of the prosecutor concerning defenses wherein the prosecutor argued: "We know the pattern of these defenses; we know how they follow. These defendants don't think up these defenses. Defense lawyers, who practice criminal law day in and day out, they are the ones that concoct these defenses, and we know what they are going to be the first day we arrest a man \*\*\*," this court at page 348 stated: "Such argument cannot possibly aid the jury in weighing or evaluating the evidence, but tends only to arouse its antagonism against defendant and his attorney." This court reversed and remanded because of prejudicial argument.

In defense of the propriety of its argument, the State contends that when considered as a whole the argument of the State was not so excessive or improper as to be prejudicial.

It has been frequently held that a defense attorney cannot provoke a reply to his own improper argument and then claim error. (*People v. Weisberg* (1947), 396 Ill. 412, 429.) From our examination of the record, we conclude that defense counsel provoked a part of the State's improper argument.

The court, in the case at bar, did not adequately control the trial, although it sustained objections to part of the improper argument and admonished the prosecutors to

confine their remarks to the evidence, *etc.* Even under these circumstances, and when the jury was instructed to disregard the argument, *etc.,* the court took no further action to control the argument when the prosecutors resorted to similar improprieties in further argument. Argument such as that set forth above is not proper, and after ruling on objections thereto, the court should take such prompt action as is necessary to preclude counsel from continuing such misconduct. Counsel's disregard of court rulings and the continuance of such misconduct warrants the imposition of sanctions by the court.

In the light of these circumstances, we do not find that the impropriety of the argument was cured by the court's action in connection therewith.

The defendants raise several issues which may arise on retrial.

Robert Stock and Charles Wilfong moved prior to trial for a severance on the ground that one or more of their co-defendants had given statements to law-enforcement officers implicating them in the subject charges. The prosecutors responded that the statements they intended to utilize were made by Charles Wilfong and Robert Stock at the time and place of their joint arrest. The severance motion was denied. The defendants claim that the statements were not made in the presence of the other defendant, although the record reflects that it was at the time and place of their joint arrest. The defendants claim that this case is under the rule of *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620. However, here the statements complained of also included an admission by the maker of the statement of his own guilt. In such an instance the hearsay declaration of guilt by another is cumulative and nonprejudicial. *People v. Rosochacki* (1969), 41 Ill.2d 483.

The defendants complain that their fourth amendment rights were violated, in that the goods which were allegedly stolen were recovered by the police from the

apartment of Mrs. Ruth Flood, which was shared by Robert Stock. The claim is that Ruth Flood did nothing more than acquiesce to a claim of lawful authority, and that the case is therefore the same as *Bumper v. North Carolina* (1968), 391 U.S. 543, 20 L. Ed. 2d 797, 88 S. Ct. 1788. However, *Bumper* is different in that there the police arrived and claimed to have a search warrant when in fact they had none. The Supreme Court held that the mere acquiescence to that claim did not constitute a waiver of fourth amendment rights. Here, there was no claim of authority. Officer Hettinger was admitted to the apartment upon advising Mrs. Flood that he and his partner were looking for Robert and Dianne Stock in connection with a robbery investigation. He knew Mrs. Flood from prior assignments, and it may be that Mrs. Flood allowed him to enter because she assumed by his presence that she had to conform her activity to his requests. However, mere subjective possibility is not sufficient to show acquiescence to a claim of lawful authority.

The goods were not found until the officers went into the living room, where they were in plain view. The police did not enter that room until invited to do so by Mrs. Flood, and Mrs. Flood was, at that time, acting upon the advice of a friend who was not connected with the police force.

Inasmuch as the police here did not claim any right to search the apartment, and did not in fact make a search, the defendants' fourth amendment rights were not violated. The situation is somewhat analogous to that in *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022. There, Mrs. Coolidge volunteered incriminating evidence when the police arrived at her house to question her. The court, under such circumstance, held that no police action was involved, so there was no search. Similarly, Mrs. Flood's conduct in turning over the stolen goods to the police was her

voluntary action and is not chargeable to the police officers.

Defendant Wilfong complains that the prosecution wrongfully brought before the jury the fact that he had the nickname "Frenchie." It is sufficient to say here that it was clearly improper for the prosecutor to first introduce the name in a leading question after the witness testified that he did not know Charles Wilfong by any other name, but other witnesses also testified to the existence of the nickname. On retrial, the prosecution should take care to use this nickname only if relevant to a witness's testimony. We note that this is clearly an example of a name which is a nickname and not an alias.

The defendants raise two questions as to the instructions given to the jury. They claim first that it was error to give the I.P.I.-Criminal instruction on the inference arising from exclusive possession of recently stolen property. They claim that such an instruction is improper where, as here, the defendants have put into issue whether or not the goods were in fact stolen. The defendants have cited several pre-I.P.I. cases which held this type of instruction inapplicable in similar circumstances, but, being pre-I.P.I., there were differences in the wording of the various instructions.

This court, in *People v. Hawkins* (1963), 27 Ill.2d 339, at page 341 stated: "It is well established that the recent, exclusive and unexplained possession of stolen property by an accused person in and of itself gives rise to an inference of guilt which may be sufficient to sustain a conviction in the absence of other facts and circumstances which leave in the mind of the trier of fact a reasonable doubt as to his guilt." This language supports the conclusion that if a defendant's story is not believed by the trier of fact, it is to be considered to be unexplained. A defendant may not defeat the inference by the mere fact of raising any explanation.

The defendants also complain that an instruction

should have been given which provided that "The fact that the defendants may have committed another offense unrelated to the charges before the jury should in no way influence your verdict." Inasmuch as such evidence was presented by the defendants to establish their innocence, it would have been proper for the judge to give such an instruction. Such an instruction is merely cautionary however, and the decision to give such an instruction rests in the discretion of the trial judge. It is sufficient if the series of instructions, taken as a whole, fully and fairly announce the law applicable to the theories of the case. (*People v. Cavaness* (1960), 21 Ill.2d 46; *People v. Bucnis* (1950), 405 Ill. 568.) The given instructions meet this standard.

It is unnecessary to consider other allegations of error made by the defendants as they are unlikely to occur upon retrial. This judgment is reversed and the cause remanded to the circuit court of Cook County for a new trial.

*Reversed and remanded.*