THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DARRELL BEASLEY, Defendant-Appellant.

Fifth District    No. 75-176

Opinion filed August 27, 1976.

Stephen P. Hurley and John H. Reid, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert H. Howerton, State's Attorney, of Marion (Bruce D. Irish and Keith P. Vanden Dooren, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE KARNS delivered the opinion of the court:
Defendant, Darrell Beasley, was convicted of burglary and attempt (theft) in the Circuit Court of Williamson County and sentenced to three years' probation for each offense. He appeals.

On March 11, 1974, James Beasley, Sr., his sons, James Beasley, Jr., and Darrell Beasley, and his son-in-law, James Odum, were jointly indicted for burglary and attempt (theft). James Beasley, Sr., was tried by a jury, but the other defendants chose to try their cases to the court. After a joint trial, the jury acquitted James Beasley, Sr. The trial court, however, found the other three defendants guilty on both counts of the indictment.

Defendant, relying primarily upon the acquittal of James Beasley, Sr., argues that the State failed to prove him guilty beyond a reasonable

doubt. Defendant also contends that his conviction for attempt must be reversed, because it arose out of the same course of conduct as the burglary. Our disposition of the case makes it unnecessary to consider this latter issue. A summary of the relevant facts adduced at trial follows.

The Old Herrin Filter Plant, part of the municipal water works, is owned by the city of Herrin and located in an isolated part of Williamson County. The plant was no longer in operation at the time in question. Herrin police officer Herbert Long testified that on February 10, 1974, at about 4:15 p.m., he and Frank Hubbard, an off duty patrolman, were making a routine check of the Old Herrin Filter Plant when they noticed a truck parked nearby. Printed on the side of the truck were the words, "J. H. Beasley, Herrin, Empty Weight, 5,500." Officer Long said that James Beasley, Jr., was on top of the truck, cranking a winch which was attached to the vehicle's roof, that Darrell Beasley, James Beasley, Sr., and James Odum were standing on the ground nearby, and that the men on the ground hurried behind the truck in an apparent attempt to hide when they saw the police car approaching. Officer Long also noticed a large electrical motor attached to the truck by a chain and a winch cable. The motor had been dragged from a small building attached to the main plant building. Officer Long said that prior to February 10 someone had unscrewed the nuts which held the motor to its base, and that on the night of February 9 he had helped put them back in place. The four men were arrested and driven to the police station. Frank Hubbard, who also testified at trial, corroborated Officer Long's testimony in almost every detail. Additionally, Hubbard remembered seeing men fishing in a lake located behind the plant. The foregoing testimony was further corroborated by the testimony of police chief William Humphrey and police officer Roy Cole, who were summoned to the scene of the incident shortly after it occurred.

James Beasley, Sr., testified at trial that he had been in the scrap business all of his life and had purchased scrap from the Old Herrin Filter Plant some years earlier. This earlier purchase had been made through Mike Mirani, who was then the Herrin water superintendent. Mr. Beasley said that Mirani visited him some time prior to February 10, 1974, and told him that there was more scrap at the filter plant. Mirani suggested that Mr. Beasley drive out to the plant and inspect it. The testimony of Beasley's wife confirmed this version of the conversation.

Mr. Beasley further testified that he went to the filter plant on February 10 with his two sons and his son-in-law because he was interested in buying the scrap mentioned by Mike Mirani and wanted to inspect it. Beasley said that when they arrived at the plant they spent some time looking over scrap pipe scattered on the ground, and then found the electric motor in a small building, sitting sideways on its base. Mr. Beasley

said that the motor was not bolted down. According to Beasley, it was dark in the building and the motor was covered by its casing. In order to inspect the motor, Beasley and his companions attached a chain to the back end of their truck and used it to drag the motor into the sunlight. He said that the winch cable had not been attached to the motor because the winch's lifting capacity was only 145 pounds and the motor weighed approximately a ton. Beasley denied that his son had been in the truck, cranking the winch handle, when the police arrived. He said that at that moment James Odum was under the truck unhooking the chain.

Mike Mirani, former commissioner of the Herrin Water and Sewer Department, testified as follows. He visited James Beasley, Sr., some time before February 10, 1974, and discussed the scrap at the Old Herrin Filter Plant with him. He could not, however, remember advising Beasley to go out and make an inspection. Mirani told Beasley that he was no longer employed by the city and that Beasley would have to talk to Basil Russell, the present water superintendent, about buying the scrap. Lester Hammonds, a friend of the Beasley family, was also present during the conversation between Mirani and Beasley. His testimony corroborates Mike Mirani's version of what was said.

Floyd D. Walker testified that he had been superintendent of the Herrin Water and Sewer Department from 1969 to October of 1973. He stated that he had never given James Beasley, Sr., permission to enter the grounds of the Old Herrin Filter Plant.

Basil Russell, the present superintendent, stated that he was appointed to that position in October of 1973. He said that he knew the members of the Beasley family, but had never discussed the sale of scrap with any of them. Mr. Russell went on to say that he had never given any of the Beasleys permission to enter the plant premises.

James Odum also testified at trial. Mr. Odum stated that he and the other men had first tried to move the motor with their winch. When the winch wouldn't work, they were forced to use a chain attached to the truck. Odum testified that he was underneath the truck, and that James Beasley, Jr. was in the truck, when the police arrived.

Defendant, Darrell Beasley, admitted in his testimony that he had accompanied his father and the other men to the filter plant on February 10, 1974. When asked why he went with them, he responded:

> "Well, at the time I was not working because I had been hurt. They asked me if I wanted to go out and look at some junk that I was thinking about buying and if I could work at all, you know, I could use the torch and help them. I told him that I would go out and look at it."

■■ To support a burglary conviction, specific intent to steal must exist at the time of unauthorized entry. (*People v. Polansky*, 6 Ill. App. 3d 773,

287 N.E.2d 747 (3rd Dist. 1972).) Even assuming that defendant did not personally enter the plant building or help in hauling out the motor, he may be held accountable for the conduct of his companions if he intended to promote or facilitate commission of the burglary. (Ill. Rev. Stat. 1975, ch. 38, par. 5—2(c).) Intent is ordinarily proved circumstantially by inferences drawn from conduct. *People v. Porter*, 28 Ill. App. 3d 411, 328 N.E.2d 618 (5th Dist. 1975).

The State contends that the evidence against the defendant will at least support an inference that he intended to promote or facilitate commission of the burglary. In support of this proposition, the State cites *People v. Nugara*, 39 Ill. 2d 482, 236 N.E.2d 693 (1968), *cert. denied*, 393 U.S. 925, 21 L. Ed. 2d 261, 89 S. Ct. 257 (1968), where the Illinois Supreme Court said:

> " '* * * one may aid and abet without actively participating in the overt act, and if the proof shows he was present at the crime without disapproving or opposing it, the trier of fact may competently consider this conduct with other circumstances and thereby reach a conclusion that such person assented to the commission of the criminal act, lent his countenance and approval and was thereby aiding and abetting the crime.' " 39 Ill. 2d 482, 487, 236 N.E.2d 693, 697.

We agree that *Nugara* correctly states the law, but it is still difficult to find sufficient proof of criminal intent on the part of defendant. The defendants' conduct in this case lacks much of the element of furtiveness from which intent is usually inferred in burglary cases. (See, for example, *People v. McCoy*, 3 Ill. App. 3d 642, 279 N.E.2d 417 (1st Dist. 1972).) Defendant and his companions drove to the filter plant in broad daylight, in a truck with the Beasley name plainly printed on its side. The testimony of Frank Hubbard also indicates that fishermen were present at the lake behind the plant when the defendants were discovered. Failure to conceal one's identity may properly be considered in deciding upon the existence of criminal intent. *People v. Hutchinson*, 50 Ill. App. 2d 238, 200 N.E.2d 416 (1st Dist. 1964).

At trial, defendant testified that he went to the filter plant to help his father examine scrap. This explanation is believable and accounts for most of defendant's conduct. The rule in Illinois and elsewhere is that where an act may be attributed to a criminal or to an innocent cause, it will be attributed to the innocent cause. (*People v. Benson*, 19 Ill. 2d 50, 166 N.E.2d 80 (1960).) The fact that the Beasleys drove onto the plant grounds and entered a part of the plant building without authorization is not necessarily inconsistent with defendants' explanation. The plant was not in operation, there were no signs posted to warn trespassers and the grounds were apparently open to the public for fishing. A photograph in

evidence indicates that the "building" involved in the case was not much more than a recess in the side of the plant wall. Under these conditions, it is very possible that the defendants simply saw no need to obtain permission to enter the premises and look around.

Other aspects of the case are not easily explained on a theory of innocence. Basil Russell testified that he was acquainted with the Beasley family, and other evidence indicates that James Beasley, Sr., knew that Russell was in charge of the Old Herrin Filter Plant. If Mr. Beasley were truly interested in buying scrap located at the plant, it seems likely that he would have consulted Russell before going out there. The unrebutted testimony of Officer Long and Frank Hubbard that defendants attempted to hide behind their truck when they saw the police car approaching is also evidence which could, when considered along with the other circumstances, give rise to an inference of criminal intent. (*People v. Songer*, 28 Ill. 2d 433, 192 N.E.2d 861 (1963).) Examination of the testimony of James Beasley, Sr., and Officer Long reveals certain inconsistencies. For instance, Officer Long stated that the winch cable was attached to the motor and that Beasley's son was turning the winch handle when the police arrived. Beasley, however, denied that the winch had been used at all. Long also testified that he had helped bolt the motor to its base on the night of February 9. Beasley, on the other hand, stated that on February 10 the motor had not been bolted in place. There is no reason to doubt Officer Long's testimony, and it seems unlikely that someone would have gone to the plant and unscrewed the bolts in such a short span of time.

Resolution of this case depends greatly upon the credibility of the defense witnesses and the weight given their testimony, matters primarily for the trier of fact. (*People v. Franceschini*, 20 Ill. 2d 126, 169 N.E.2d 244 (1960).) Apparently, the trial court did not believe the explanation given by the defense witnesses. If nothing further were involved, we would be inclined to uphold the trial court's decision despite our own reservations about the strength of the evidence. The jury, however, acquitted James Beasley, Sr., on the same evidence, and defendant argues that this raises a reasonable doubt as to his own guilt.

■■ Generally, the failure to convict one co-defendant does not raise a reasonable doubt as to the guilt of the other co-defendants. (*People v. Mirabella*, 294 Ill. 246, 128 N.E. 374 (1920).) More recent Illinois cases indicate, however, that where the evidence given against all of the defendants *is* identical in all respects, the acquittal of one defendant must be considered in deciding whether a co-defendant was proved guilty beyond a reasonable doubt. (*People v. Stock*, 56 Ill. 2d 461, 309 N.E.2d 19 (1974); *People v. Patterson*, 52 Ill. 2d 421, 288 N.E.2d 403 (1972); *People v. Griffin*, 88 Ill. App. 2d 28, 232 N.E.2d 216 (1st Dist. 1967); *People v.*

*Carter*, 19 Ill. App. 3d 21, 311 N.E.2d 213 (1st Dist. 1974).) The evidence of James Beasley, Sr.'s guilt was at least as great as the evidence presented against the other defendants. In fact, James Beasley, Sr., alone seems to have engaged in whatever planning preceded the trip to the filter plant. If the same trier of fact had acquitted James Beasley, Sr., and convicted the other defendants, we would not hesitate to require acquittal of all the defendants. (See Annot., 22 A.L.R.3d 717 (1968).) The same rule should apply in a joint trial where the court and jury, as respective triers of fact, reach inconsistent conclusions on identical evidence of guilt. We agree with the statement in *Carter* that "[w]here co-defendants are tried on the same facts, the verdicts should be consistent." 19 Ill. App. 3d 21, 23, 311 N.E.2d 213, 215.

Accordingly, we find that defendant, Darrell Beasley, was not proved guilty beyond a reasonable doubt.

Reversed.

JONES and G. J. MORAN, JJ., concur.