(No. 49588.—

## THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MORRIS ELLIS, Appellee.

*Opinion filed Dec. 4, 1978.—Rehearing denied Jan. 25, 1979.*

KLUCZYNSKI, J., took no part.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald B. Mackay, Assistant Attorney General, of Chicago, and Paul P. Biebel, Jr., Deputy State's Attorney, and Dorothy Kirie Kinnaird, Special Assistant State's Attorney, of counsel), for the People.

William J. Harte, Ltd., of Chicago, and Arthur Aaron Ellis and Morris W. Ellis, of Ellis & Ellis, of Chicago, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

The defendant, Morris Ellis, was convicted of two misdemeanor violations of the Election Code (Ill. Rev. Stat. 1973, ch. 46, pars. 29—11, 29—12) in a bench trial in the circuit court of Cook County. He was fined $100 for each conviction. The appellate court found the evidence insufficiently supported the convictions and reversed. (47 Ill. App. 3d 596.) We allowed the People leave to appeal. (65 Ill. 2d R. 315.) The parties agree the issue is whether the evidence was sufficient to establish guilt beyond a reasonable doubt.

During the primary election day of March 19, 1974, the defendant was a poll watcher. Among others who were at the polling place at 919 West Montrose Avenue in Chicago on that day were the two complainants, Patricia Fust, a Republican election judge, and Marion Clough, a Democratic election judge. On complaint of Fust, the defendant was arrested. Fust's original complaint was "nolle prossed" on motion of the State and three new ones filed. One of those was dismissed. The other two are germane to this appeal. The first, over Fust's signature, charged the defendant with failure to comply with an order of the election authority in that he continued to "electioneer" in the polling place after being told to stop, in violation of section 29—11 of the Election Code (Ill. Rev. Stat. 1973, ch. 46, par. 29—11). The second complaint, over Clough's signature, charged the defendant with disregard of the Election Code (Ill. Rev. Stat. 1973, ch. 46, par. 29—12) in that he "knowingly solicited votes within the polling place" in violation of section 17—29 of the Election Code (Ill. Rev. Stat. 1973, ch. 46, par. 17—29). Section 29—11 of the Election Code provides:

"Any person who knowingly fails or refuses to comply with any lawful order of an election authority issued by the election authority in the performance of the

duties of the election authority, shall be guilty of a Class A misdemeanor."

Section 29—12 is:

"Any person who knowingly (a) does any act prohibited by or declared unlawful by, or (b) fails to do any act required by, this Code, shall, unless a different punishment is prescribed by this Code, be guilty of a Class A misdemeanor."

Section 17—29 provides:

"No judge of election, challenger, or other person shall, at any primary or election, do any electioneering or soliciting of votes or engage in any political discussion within any polling place or within 100 feet of any polling place; no person shall interrupt, hinder or oppose any voter while approaching within 100 feet of any polling place for the purpose of voting. Judges of election shall enforce the provisions of this Section."

Five separate incidents, occurring on March 19, 1974, and giving rise to the charges, are involved. The first occurred about 9 a.m. when two voters, a man and a woman who were not together, entered the polling place at the same time. Patricia Fust, who had been an election judge for previous elections, testified the man, whose name she could not recall, asked for a Republican ballot, but the defendant said the voter "made a mistake" and wanted a Democratic ballot. She said she then told the defendant to "leave the voters alone." Marion Clough testified she recalled that the man and the woman, whose names were Bunting and Marks respectively, requested Republican ballots but that the defendant interjected with a direction they be given Democratic ballots. According to Clough, Bunting replied, "Sir, I know what I want." Clough remembered Fust asking the defendant to leave the voters alone. Frank Alschuler, who was a poll watcher from 6 to 9:15 a.m., testified he saw a voter named Bunting check the "Republican" square on a certificate of registration. The defendant said the voter was confused and wanted a Democratic ballot, according to Alschuler, but the voter

repeated his request for a Republican ballot; at this point Fust said the voter should not be harassed. Alschuler further testified that the voter finally marked the Democratic square of the card and crossed out the Republican mark. On cross-examination, upon being shown a voter's red certificate of registration with the name Howard Bunting on it, Alschuler admitted there was no change or erasure but that the card was marked in the Republican square. Alschuler further testified that although he may have been mistaken about the name, he did see a man cross out the Republican square on the voter registration card and mark the Democratic square.

The defendant testified that he knew Howard Bunting and that he conversed with him on March 19, 1974, but that he did not speak to him inside the polling place. Nor did he have a conversation about Bunting with others inside the polling place. Witness Mary Hudik, a Democratic judge of election, testified that she did not see the defendant do "anything unusual," that he helped "wheel in" disabled voters, and that she knew Howard Bunting and did not see the defendant talking to Bunting. Henrietta Marks, on behalf of the defendant, testified she entered the polling place at the same time as Howard Bunting and that the defendant said nothing to her in the polling place, nor did she hear him say anything to Bunting.

On rebuttal Howard Bunting testified that upon showing the woman behind the registration table his registration card and signing "the slip," he was given a Democratic ballot which he refused, stating, "I'll take a Republican." He stated the defendant "told them to give me a Democratic ballot." On questioning by the court, Bunting said the defendant made the statement prior to Bunting's request for a Republican ballot.

The State maintains that this incident resulted in the order by the election judge, Fust, to "leave the voters

alone," and that the order was subsequently violated. Ill. Rev. Stat. 1973, ch. 46, par. 29—11.

Between 10 and 11 a.m., the second incident occurred. A female voter requested help while in the voting booth. Fust and Clough aided her. The defendant objected to the manner in which the help was given. Fust testified that the woman declared Democratic, stepped into the booth, and asked for help (after pulling down a lever resulting in three votes for one candidate) because she wished to cast 1½ votes for each of two candidates. Fust said she asked Clough, the Democratic judge, to step into the booth with her to explain how to operate the machine. As Fust was explaining to the voter, the defendant interrupted with an admonishment not to instruct the voters and that the voter was to vote for only one candidate. Fust testified she replied it was the voter's choice. Marion Clough testified that a voter asked to be shown how to use the machine so Fust asked the witness to enter the booth with her. The witness said Fust "pulled the curtains over our shoulders" and explained to the voter how to vote for an office for which there are three candidates. The defendant, Clough said, pulled the curtains apart, pushed Fust aside, and "said you don't want to vote for him." The voter then pulled the lever for one candidate and departed.

Genevieve Mudloff, "a checker for the defendant" in the polling place, testified that she never saw him tell voters how to vote or enter a voting booth. She did say Fust was hostile towards the defendant, and that when the defendant told Fust she should not be behind the curtain, Fust became visibly angry and told the defendant to leave the room, which he did. Mary Hudik also testified that the defendant admonished Fust not to go behind the curtains. The defendant's account was that, having noticed Fust and Clough, once or twice before, enter a polling booth when a voter requested assistance, he, upon the occurrence of this

particular incident, informed Fust that she was violating the law while instructing the voter and remaining behind closed curtains. He said that he approached Fust and Clough only after overhearing the conversation between the voter and Fust and after the two judges and the voter left the booth. The defendant said he then complied with Fust's order to leave the polling place.

The third incident involved a voter who, according to Fust, requested a Republican ballot. The defendant interrupted, indicating the man actually wanted a Democratic ballot. Fust testified she asked the man which ballot he wanted but the defendant continued to talk. Fust asked the defendant to let her ask the voter for his preference. When she determined the voter was interested in a specific candidate, she changed the ballot designation to Democratic to reflect the voter's choice. She was unable to recall the voter's name. Marjorie Alschuler testified that a voter requested and was given a Republican ballot, but the defendant said he should be given a Democratic ballot. The "judge to whom he [the defendant] was speaking" contradicted the defendant. When it was finally determined the voter wished to vote for a Democratic candidate, the judges changed it for him, according to Mrs. Alschuler. Although she was initially uncertain of the voter's name, she identified him, upon seeing ballot applications, as Frank Palacci.

The last two incidents were related by Mr. and Mrs. Alschuler respectively. He testified the defendant passed out campaign literature inside the polling place, and she testified the defendant stood before an unoccupied, open booth, with a voter, pointing to various levers on the machine.

The defendant denied urging anyone to change a vote, passing out campaign literature in the polling place, being told to leave voters alone, instructing or telling any voter how to vote, or otherwise soliciting votes or electioneering

within 100 feet of the polling place. There was corroborative testimony, indicated above, by defense witnesses. Three witnesses, Jerome Levatino, Arthur Barton and Sidney Marovitz, testified that the defendant's reputation in the community and as a member of the bar was excellent.

Violation of a provision of the Election Code is a criminal offense. (Ill. Rev. Stat. 1973, ch. 46, par. 29—13.) In a criminal proceeding, a reviewing court must not reverse a "conviction where the evidence is not so improbable as to raise a reasonable doubt of guilt." (*People v. Novotny* (1968), 41 Ill. 2d 401, 412; *People v. Yarbrough* (1977), 67 Ill. 2d 222, 227.) Where there is conflicting testimony, as here, regarding five separate incidents in the polling place, the appeals court must not substitute its judgment, because the weight of the evidence and credibility of witnesses are strictly within the competence of the fact finder. (*People v. Orlando* (1942), 380 Ill. 107, 119; *People v. Novotny* (1968), 41 Ill. 2d 401, 412; *People v. Yarbrough* (1977), 67 Ill. 2d 222, 227.) Only where the evidence fails to sustain the verdict, or is improbable, unsatisfactory or inconclusive, may we set aside a conviction; and there it is our duty to do so. *People v. Reese* (1966), 34 Ill. 2d 77, 80; *People v. Coulson* (1958), 13 Ill. 2d 290, 296.

Our review of the record compels us to reverse the appellate court because the evidence is not so improbable as to raise a reasonable doubt of guilt. The cases the defendant cites are not helpful since the evidence here is simply not insufficient as it was in those cases. We are not faced with problems such as the testimony of a single questionable witness or weak identifications. Rather, we have several occurrence witnesses with corroborative and specific testimony on the part of State witnesses. Moreover, the defendant either denies an incident or gives a contrary version while his witnesses generally attest to his

good conduct on that day, with only some reference to specific incidents, or deny unusual or improper conduct on his part. The convictions must stand.

For the reasons stated, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

*Appellate court reversed;*
*circuit court affirmed.*

MR. JUSTICE KLUCZYNSKI took no part in the consideration or decision of this case.