THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARK HOBSON, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL WALLERSTEDT, Defendant-Appellant.

Third District   Nos. 78-184, 78-152 cons.

Opinion filed October 12, 1979.

Robert Agostinelli and Michael Filipovic, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Petka, State's Attorney, of Joliet (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

The defendants, Michael Wallerstedt and Mark Hobson, were indicted by the grand jury of Will County for the offense of aggravated kidnapping (Ill. Rev. Stat. 1977, ch. 38, par. 10—1(a)(2)). Prior to giving the case to the jury, the trial court instructed the jury on the offenses of unlawful restraint (Ill. Rev. Stat. 1977, ch. 38, par. 10—3) and aggravated assault (Ill. Rev. Stat. 1977, ch. 38, par. 12—2(a)(1)) on the ground that they were lesser-included offenses. Although both Wallerstedt and Hobson were acquitted of aggravated kidnapping, they were convicted of unlawful restraint. In addition, Wallerstedt was convicted of aggravated assault. Wallerstedt was subsequently sentenced to a term of 2 years probation conditioned upon serving 90 days in the county jail. Hobson was sentenced to a term of 1 year probation, which was conditioned upon 60 days incarceration. Both defendants appeal from their convictions. Because the charges against both Wallerstedt and Hobson arose out of the same incidents, and most of the issues raised by the defendants on appeal are similar, the appeals of Wallerstedt (78-152) and Hobson (78-184) have been consolidated.

The incidents which resulted in the convictions of Wallerstedt and Hobson occurred in the early morning hours of July 23, 1977, when Wallerstedt, Hobson, and six other individuals (one of whom, Steven Fehr, was armed with a handgun) participated in a verbal and physical attack upon John Reinhofer which culminated in Reinhofer's abduction at gunpoint. Reinhofer was the State's chief witness at trial, and both defendants' convictions are due in large part to his testimony.

The first contention raised by the defendants on appeal is that they were not proven guilty beyond a reasonable doubt of unlawful restraint and, in Wallerstedt's case, of aggravated assault, because the only basis for their convictions was Reinhofer's "unreasonable" testimony. The defendants' characterization of Reinhofer's testimony as unreasonable is based on four grounds. First, the defendants point out that Reinhofer's testimony is marked by numerous inconsistencies. Reinhofer was impeached as a result of prior inconsistent statements he gave to the

police and grand jury relating to the events prior to and during the assault and kidnapping. Defense counsel was also able to elicit from Reinhofer the admission that on previous occasions he had lied to the police. Second, the defendants claim that Reinhofer's testimony that he struggled with Fehr while the latter was armed with a pistol and after threats were made on his life is improbable, unconvincing, and incredible. Third, the defendants point out that portions of Reinhofer's testimony were contradicted by several defense witnesses, who stated that they did not even see Reinhofer at the farm where the incident occurred on the night in question. Finally, in regards to Wallerstedt's convictions, he directs our attention to Reinhofer's statement that he "hated" Wallerstedt as revealing bias against that defendant which we should consider in weighing Reinhofer's testimony.

■■ Of the four factors defendants have relied upon in attempting to discredit Reinhofer's testimony, the most damaging to his credibility are the numerous inconsistencies in his version of the incident. There is no doubt that these inconsistencies have an effect upon the testimony of Reinhofer. However, the effect, which is one of credibility and weight, is one which is primarily for the jury to decide. (*People v. Lawson* (1978), 65 Ill. App. 3d 755, 382 N.E.2d 878.) On this particular point the Illinois Supreme Court has stated: "It is neither the duty nor the privilege of a reviewing court to substitute its judgment as to the weight of disputed evidence or the credibility of witnesses for that of the trier of fact who heard the evidence presented and observed the demeanor of the witnesses * * *." (*People v. Novotny* (1968), 41 Ill. 2d 401, 412, 244 N.E.2d 182, 188. Accord, *People v. Ellis* (1978), 74 Ill. 2d 489, 384 N.E.2d 331.) For a reviewing court to set aside a conviction, the evidence must be palpably contrary to the finding of guilt or so unreasonable, improbable, or unsatisfactory that reasonable doubt is raised as to the guilt of the accused. (*People v. Ellis* (1978), 74 Ill. 2d 489, 384 N.E.2d 331; *People v. Reese* (1973), 54 Ill. 2d 51, 294 N.E.2d 288.) Given the great deference to be afforded the jury's finding of guilt, the fact that the majority of the inconsistencies in Reinhofer's testimony relate to occurrences which do not bear directly on the guilt or innocence of the accuseds, and the fact that the evidence presented to the jury, if believed, is sufficient to establish the guilt of both defendants beyond a reasonable doubt, we find that the defendants' contention that the State has failed to meet its burden of proof to be without merit.

■■■ The second contention raised by the defendants on appeal is that their unlawful restraint convictions should be reversed because on the same facts another co-defendant, Rebecca Hopman, was acquitted of the same offense. A similar argument was made in *People v. Beasley* (1976), 41 Ill. App. 3d 550, 353 N.E.2d 699, where the court outlined the

applicable law: "Generally, the failure to convict one co-defendant does not raise a reasonable doubt as to the guilt of the other co-defendants. (*People v. Mirabella*, 294 Ill. 246, 128 N.E. 274 (1920)). More recent Illinois cases indicate, however, that where the evidence given against all of the defendants is identical in all respects, the acquittal of one defendant must be considered in deciding whether a co-defendant was proved guilty beyond a reasonable doubt. (*People v. Stock*, 56 Ill. 2d 461, 309 N.E.2d 19 (1974); *People v. Patterson*, 52 Ill. 2d 421, 288 N.E.2d 403 (1972); *People v. Griffin*, 88 Ill. App. 2d 28, 232 N.E.2d 216 (1st Dist. 1967); *People v. Carter*, 19 Ill. App. 3d 21, 311 N.E.2d 213 (1st Dist. 1974))." (41 Ill. App. 3d 550, 554-55, 363 N.E.2d 699, 703.) However, where there is the slightest difference in the evidence as between co-defendants who are tried jointly, the acquittal of one does not raise a reasonable doubt as to the guilt of the other, as the trier of fact is entitled to weigh the evidence and make allowances for the difference. *People v. Taylor* (1974), 25 Ill. App. 3d 396, 323 N.E.2d 388.

■ It is true that Wallerstedt's and Hobson's convictions for unlawful restraint, as well as Rebecca Hopman's acquittal of that offense, arose from an identical source—Reinhofer's testimony. This does not necessarily mean, however, that the evidence against these three defendants was identical in all respects. Indeed, the record reveals that during the course of the incident at the farm each of these defendants engaged in acts which were distinct, distinguishable, and separable from the acts of their co-defendants. At one point during complainant Reinhofer's altercation with Fehr Reinhofer attempted to enter his car and escape, but was prevented by Wallerstedt from doing so when the latter shut the car door before Reinhofer could get in. Neither Hobson nor Hopman did anything similar. Wallerstedt at one point came into possession of Fehr's handgun, but did not threaten Reinhofer with it. However, Reinhofer testified that Hopman, after taking the gun from Wallerstedt, pointed it at Reinhofer's head and stated "I'm going to finish it." Hopman also had the gun aimed at Reinhofer during his abduction. According to Reinhofer, Hobson never came into the possession of Fehr's handgun. It may very well be true that the evidence of Hopman's guilt of the offense of unlawful restraint is at least as great as that of Wallerstedt, and of Hobson in particular (see *People v. Beasley* (1976), 41 Ill. App. 3d 550, 353 N.E.2d 699), but this does not make the evidence presented against all three defendants identical so as to raise a reasonable doubt as to the guilt of the defendants in the cases before us. Further, it should be pointed out that Hopman, who did not request a trial by jury, was found guilty by the trial court of aggravated assault. Although the jury's convictions of Wallerstedt and Hobson may appear to be inconsistent

with the court's findings with respect to Hopman, there exist valid reasons for the trial court's actions. The trial court may have decided to be lenient with Hopman and convict her of only the misdemeanor, aggravated assault, rather than unlawful restraint, a felony. In addition or in the alternative, the court may have been of the belief that in light of Hopman's aggravated-assault conviction, a conviction for unlawful restraint would have served no useful purpose. (See *People v. Ellis* (1976), 39 Ill. App. 3d 766, 350 N.E.2d 265.) Whatever the trial court's rationale, its findings with regard to Hopman, based upon unidentical evidence, are not fatal to the convictions of either Hobson or Wallerstedt.

The third issue raised by defendants on appeal concerns the trial court's refusal to allow cross-examination of Reinhofer on the subject of his hostility, bias, and prejudice toward Hobson. During Hobson's cross-examination of the complainant, Hobson's counsel sought to introduce for the purposes of impeachment a conversation Reinhofer had with Hobson the day after the offense and prior to the latter's arrest. State objections to the introduction of the evidence were sustained, and Hobson's counsel made an offer of proof that if permitted to testify, Reinhofer would state that he grabbed Hobson, threw him up against a wall, and, according to Hobson, said "You're going to testify for me or I'm going to put your name on that list, too. And you're going to be arrested so I'll be over tomorrow at eleven o'clock to pick you up."

■■ ■ The manner and scope of cross-examination is within the substantial discretion of the trial court, and absent a showing of a clear abuse of that discretion resulting in manifest prejudice, the trial court's decision with regard to the extent of permissible cross-examination will not be overturned. (*People v. Coles* (1979), 74 Ill. 2d 393, 385 N.E.2d 694.) The bias or hostility of a witness toward a party, manifested in the present case by the threat made by the witness against the accused (see *People v. Bote* (1941), 376 Ill. 264, 33 N.E.2d 449) is always pertinent on the question of credibility, as the feelings of the witness may well influence the tenor of that witness' testimony and the manner in which he testifies. (*People v. Mullinax* (1979), 67 Ill. App. 3d 936, 384 N.E.2d 1372; *People v. Henson* (1975), 32 Ill. App. 3d 717, 336 N.E.2d 264.) Indeed, there is authority in support of the proposition that it is reversible error to prohibit cross-examination of a witness or matters showing bias, interest, or motive to testify falsely when, as in the instant cases, the defendant's theory is that the State's witness is unbelievable. (*People v. Lake* (1978), 61 Ill. App. 3d 428, 378 N.E.2d 364.) Because Reinhofer provided the most damaging evidence against Hobson at the trial, we are of the opinion that the trial court's refusal to permit cross-examination of Reinhofer on the subject of his threat to Hobson was manifestly

prejudicial to that defendant. The credibility of Reinhofer is of the utmost importance in the cases before us. Both defendants' convictions hinge upon Reinhofer's credibility and the jury's acceptance of his testimony as true. To foreclose examination of Reinhofer on a subject that has a direct bearing on his credibility and could possibly affect the jury's verdict is to wrongfully deprive Hobson of his rightful opportunity to impeach Reinhofer and discredit his testimony. We therefore hold that as to Hobson, the trial court's decision excluding cross-examination of Reinhofer on the subject of his threat to Hobson was reversible error.

■■■ However, the trial court's decision excluding this evidence was not manifestly prejudicial to Wallerstedt. We do not see how the revelation of Reinhofer's possible motivation for testifying falsely against Hobson affects his testimony against Wallerstedt. Further, Wallerstedt has failed to preserve the error of the trial court in improperly limiting cross-examination of Reinhofer on review as a result of his failure to assert it as error in his post-trial motion. (*People v. Miller* (1977), 46 Ill. App. 3d 882, 361 N.E.2d 373; *People v. Guynn* (1975), 33 Ill. App. 3d 736, 338 N.E.2d 239.) Wallerstedt can only be saved from the waiver if the error of the trial court constituted plain error under Supreme Court Rule 615(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a)). "Before plain error can be considered as a means of circumventing the general waiver rule, it must be plainly apparent from the record that an error affecting substantial rights was committed." (*People v. Precup* (1978), 73 Ill. 2d 7, 17, 382 N.E.2d 227, 231.) Reinhofer's threat to Hobson does not affect Wallerstedt, and as a consequence the trial court's exclusion of this evidence in regard to him did not constitute plain error.

■■ The final issue, raised by Wallerstedt, concerns the propriety of his conviction for aggravated assault. According to the indictment, Wallerstedt was charged only with the offense of aggravated kidnapping (Ill. Rev. Stat. 1977, ch. 38, par. 10—2(a)(5)). However, the trial court instructed the jury on the offenses of unlawful restraint and aggravated assault on the grounds that these offenses are lesser-included offenses of aggravated kidnapping. If aggravated assault is not a lesser-included of aggravated kidnapping, Wallerstedt's conviction of this offense must be vacated because a defendant indicted of one offense cannot be convicted of an unindicted offense which is not a lesser-included of the offense for which he is charged. See *People v. Rainbolt* (1977), 52 Ill. App. 3d 374, 367 N.E.2d 293.

■■ Although the Fifth District has recently found that aggravated assault under section 12—2(a)(1) of the Criminal Code (Ill. Rev. Stat. 1977, ch. 38, par. 12—2(a)(1)) is a lesser-included of aggravated kidnapping under section 10—2(a)(5) (Ill. Rev. Stat. 1977, ch. 38, par. 10—2(a)(5)) (*People*

*v. Roberts* (1979), 71 Ill. App. 3d 124, 389 N.E.2d 596), we disagree. A lesser offense "is one composed of some, but not all of the elements of the greater offense, and which does not have any element not included in the greater offense [citation], so that it is impossible to commit the greater offense without necessarily committing the lesser offense." *(People v. Delk* (1976), 36 Ill. App. 3d 1027, 1041, 345 N.E.2d 197, 209; accord, *People v. Russell* (1979), 69 Ill. App. 3d 59, 386 N.E.2d 1369). To commit the crime of aggravated kidnapping under section 10—2(a)(5), the kidnapper must commit the offense of kidnapping "while armed with a dangerous weapon." (Ill. Rev. Stat. 1977, ch. 38, par. 10—2(a)(5).) A person commits the crime of aggravated assault under section 12—2(a)(1), when, in committing an assault, he "uses a deadly weapon." (Ill. Rev. Stat. 1977, ch. 38, par. 12—2(a)(1).) It seems clear to us that an individual can kidnap an individual while armed without necessarily putting the victim in reasonable apprehension of receiving a battery through the use of a deadly weapon. Consequently, it is possible to commit the offense of aggravated kidnapping under section 10—2(a)(5) without committing aggravated assault under section 12—2(a)(1), and the latter is, as a result, not a lesser-included of the former. Because Wallerstedt was not indicted for the offense of aggravated assault, and it is not a lesser-included of the offense for which he was indicted, his aggravated assault conviction must be vacated.

For the foregoing reasons, the judgment of the Circuit Court of Will County in 78-184 is reversed and remanded for a new trial, and the judgment of the Circuit Court of Will County in 78-152 is affirmed in part and vacated in part.

78-184—Reversed and remanded.
78-152—Affirmed in part and vacated in part.

STOUDER, P. J., and ALLOY, J., concur.